## Staunton.

### BURDINE v. BURDINE'S EX'OR.

SEPTEMBER 13, 1900.

Absent, Riely, J.

1. SPECIFIC PERFORMANCE—*Agreement to Make a Will—Death of Intended Testator.*—An agreement to dispose of property by will cannot, strictly speaking, be specifically enforced, not in the lifetime of a party, because wills are revocable, nor after his death, because it is no longer possible for him to make a will; but equity can do what is equivalent to specific performance, by compelling those upon whom the legal title has descended to convey or deliver the property in accordance with the terms of the agreement, on the ground that it is charged with a trust in the hands of an heir, devisee, personal representative, or purchaser with notice.

2. CONTRACTS—*Uncertainty.*—The agreement in this case is not too uncertain and indefinite to be enforced.

3. CONTRACTS—*Statute of Frauds—Contract Signed by One Party—Performance by Other—Personal Services.*—Although an agreement to devise and bequeath land and personal property, in consideration of personal services to be rendered, is signed only by the intended testator, yet, if such services have been fully rendered, the agreement is binding on the party who has signed the agreement, and will be enforced against him.

4. MASTER AND SERVANT—*Misconduct of Servant—Failure to Discharge—Waiver—Condonation.*—If a master retain a servant in his employment until the expiration of his term of service, notwithstanding he may have been guilty of misconduct for which he might have been dismissed, but was not, the master will be deemed to have waived or condoned the misconduct, and will be compelled to pay the price agreed.

5. CONTRACTS—*Consideration—Illegality—Presumption.*—Illegality in the consideration of a contract will not be presumed, but must be proved, or must clearly appear upon the face of the contract.

6. DOWER—*Contracts Before Marriage to Convey to Another.*—If a man, before marriage, enters into a contract to sell his land on certain terms and conditions, which are subsequently complied with, his widow is not entitled to dower in the land, although the husband dies without having made a conveyance. Every claim or encumbrance, existing before the inception of the right of the wife, which would defeat the husband's seisin, will defeat his widow's dower in the land.

Appeal from a decree of the Circuit Court of Russell county, pronounced March 3, 1899, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*White & Penn, Chapman & Gillespie, Baily, Price & Byars,* for the appellant.

*E. S. Finney* and *J. C. Gent,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The record shows that in the year 1883, N. E. Burdine, of Russell county, and two of his former slaves, Roena and Nancy Burdine, entered into a contract, evidenced by a writing, put upon record, which is in the following words:

"Know all men by these presents, that I, N. E. Burdine, of the county of Russell, and State of Virginia, am held and firmly bound in the the sum of ten thousand dollars to Roena and Nancy Burdine, colored, of the same county and State.

"The conditions of the above bond are as follows: That I, N. E. Burdine, will make, or cause to be made, a good will to the land that I purchased of Christopher Frick, and reference can be had to said deed, and said land to be divided between the two

parties last named, as follows:  Roena to have the land running
from John Alderson's, east, commencing at a water gap; thence
up the bluff through a sugar orchard, and with the top of Cedar
Ridge, in the direction of Clinch Mountain, as far as said land
extends, and with the lines of same to the lands of Burnett Rey-
nolds, deceased, and J. W. Darton's land to the public road, and
with the same to the beginning, except four acres, including the
Lastly house; and Nancy Burdine, colored, daughter of Roena,
is to have four acres last named, and all of said tract east of
Cedar Ridge, and all north of the public road.  I also give to
Roena Burdine, colored, one-fourth part of the stock, and of
the grain and meat, etc., and growing crops that may be on the
farm at my death, all the household and kitchen furniture at
said farm; I also give to her my bank stock, amounting to one
thousand dollars, in the Bank of Abingdon.

"And I give to Nancy Burdine, five hundred dollars cash.  All
this property and cash to pass to the other parties by will at my
death; provided, they live and remain with myself and wife
during our natural lives, and in the event that Roena Burdine
should die first, she is to have the bank stock mentioned above;
and provided, further, that she return to my home at once and
remain as above stated.  I furthermore bind myself to treat both
parties with kindness and respectability, they treating me and
my wife in like manner.

"In witness whereof, I have hereunto set my hand and seal,
this 6th day of April, 1883.

"N. E. BURDINE.  [Seal.]"

From the close of the civil war, which resulted in the eman-
cipation of Roena and her daughter, Nancy, they had remained
with, or in the service of, their former master until a short time
before the said agreement was entered into, when they deter-
mined to quit his service, and remove to Washington county.
The mother did leave, taking with her her own and a part of her

daughter's personal effects, but the latter, on account of the severe illness of her old mistress, had remained and was still in his service when the contract sued on was made. The mother had been a trusted and faithful servant, who for many years had been, on account of the feeble health of Mrs. Burdine, charged with the oversight and managment of much of the work connected with the home and the farm, usually looked after by the farmer's wife. The daughter had been brought up in the home of Mr. Burdine and wife, who were childless, and treated more like a child than a servant. Among her duties was that of caring for Mrs. Burdine, who had been for many years subject to some chronic disease.

In a few days after the mother quit Mr. Burdine's service, he set about, directly and through others, to secure her return to his home, and to get her and her daughter to continue to live with them, and succeeded in getting them to agree to do so upon the terms stipulated in the writing sued on.

The daughter, after setting out in her bill the agreement with herself and mother, her construction of it, and the circumstances under which it was made, alleged that, pursuant to the agreement, her mother did at once return to Mr. Burdine's, and they together lived with and served him and his wife until the death of her mother, which was in the year 1885; and that, after the death of the latter, she continued to live with and serve them until his wife's death, and afterwards until his death; that she did not live all the time at the home of Mr. Burdine, for the reason that, after the death of her old mistress, Mr. Burdine married again, and the second wife, not desiring her to live at the house with them, he moved her to one of his farm houses, where she remained in his employment and rendered him valuable services until his death; that she and her mother having done and performed all they were required to do under the agreement, it became the duty of Mr. Burdine to keep and perform it on his part; that, having failed to make a will and give

them the property mentioned, as he had agreed to do, it became the duty of his representative and heirs to deliver and convey the property mentioned in the agreement to the complainant and her mother's heirs and representatives, according to their respective rights; and this she prayed the court would compel them to do.

Strictly speaking, an agreement to dispose of property by will cannot be specifically enforced, not in the lifetime of the party, because all testamentary papers are from their nature revocable; not after his death, because it is no longer possible for him to make a will, yet courts of equity can do what is equivalent to a specific performance of such an agreement by compelling those upon whom the legal title has descended to convey or deliver the property in accordance with its terms, upon the ground that it is charged with a trust in the hands of the heir at law, devisee, personal representative, or purchaser, with notice of the agreement, as the case may be.  3 Parsons on Contracts, section 406 (6th Ed.); *Hale* v. *Hale*, 90 Va. 728, 730.

Several grounds of defence are relied on.  The first is that the agreement cannot be specifically enforced, because it is uncertain and indefinite, both as to the property the complainant and her mother were to receive, and the services they were to render. Whilst its language is not as clear as it might be, we do not think there is any serious difficulty in determining either the duties or the right of the parties under it when considered in the light of the circumstances under which it was made.

The mother and the daughter had for many years, as the record shows, lived with, and performed certain duties for, Mr. Burdine and his wife, which were well known to both parties. The agreement of the servants on their part was that the mother should return to the home of Mr. Burdine, and that she and her daughter "live and remain with" Mr. Burdine and his wife during their natural lives, for the purpose of rendering such services as they had been accustomed to render them.  This was

manifestly the intention of the parties and the meaning of the agreement. In consideration of such services, they were each entitled to receive from Mr. Burdine, by devise and bequest, certain real and personal property definitely described, but in the event the mother died before Mr. and Mrs. Burdine, she, or rather her estate, was only entitled to receive his stock in the Bank of Abingdon.

The next objection made to the specific enforcement of the agreement is that it is lacking in mutuality, being signed only by Mr. Burdine, and, as he could not have it specifically enforced against the other parties, they cannot enforce it against him.

The question of the specific execution of unilateral contracts for the sale of real estate was considered and passed upon by this court in the recent case of *Central Land Co.* v. *Johnston,* 95 Va. 223, which seems to have been overlooked by counsel. It was held in that case that specific performance of an unilateral contract will be enforced against the party who signed it, the other requisites for specific performance existing, although the other party did not sign, and there was no mutuality of remedies between them at the time the agreement was made; the filing of the bill by the other party for specific performance, making the remedy and the obligation mutual.

In the case of *Cox* v. *Cox,* 26 Gratt. 310, which was a suit brought by the widow and heirs of a son for the specific execution of a verbal agreement made with his father, that, if the son would support him and his wife during their lives, the father would give the son the tract of land on which they lived, the mutuality required in such cases was discussed. Judge Staples, who delivered the opinion of the court, after stating that courts of equity, as a general rule, will not decree in favor of a plaintiff who is himself not bound by the agreement, said: "It is very true that, if Joseph Cox had complied with all the terms and conditions upon which the land was to be devised to him, he or his representatives would be entitled to a decree for specific per-

formance. The vendor, having received the full consideration, would, of course, be bound to convey." And the same is true in this case, although the complainant and her mother did not sign the agreement sued on, if they complied with the terms and conditions upon which Mr. Burdine agreed to make the devise and bequest to them.

Another objection is that the mother and daughter were both to serve Mr. Burdine and wife during their lives as a condition precedent to the gift of the property, and, being a condition precedent, there could be no recovery by either, since the mother died before the condition was complied with.

Whilst the agreement is between the mother and daughter on one side, it does not make the rights of one depend upon the service or the life of the other. The mother, in consideration of her returning to and living with Mr. Burdine and wife, was to receive, if she outlived them, certain definitely described property, but in the event she died before they did, she was only entitled to receive a part of that property—viz., the bank stock. The daughter, for continuing to live with them as long as they lived, would become entitled to certain other property equally well defined. Her right to that property depended, not upon the duration of her mother's life, but upon the performance of the conditions of the agreement on her part.

This brings us to the next objection—viz., that the daughter did not keep and perform the contract.

The answer avers that the daughter not only failed and refused to render the services she owed to Mr. Burdine and wife, and especially to the wife, but became unruly, vicious, aggravating, disobedient, and lewd; that she became the mother of five illegitimate children, thereby disqualifying herself from carrying out the contract on her part if she had desired to do so, and that her conduct became so notoriously bad that Mr. Burdine had to move her away from his mansion house to another part of his premises, two or three miles distant.

Such misconduct as is set out in the answer furnished ample grounds for her discharge, and, if she had been dismissed therefor, it is clear she could not maintain this suit.

The evidence fully sustains the answer as to some of the acts of misconduct averred, but it does not show that the daughter was discharged for them. On the contrary, it appears that she lived at the home of Mr. Burdine until his wife's death, and afterwards until his second marriage. The second wife and the daughter not getting on pleasantly together, the latter was removed to a small house not far from his dwelling house, near his store, where she lived until he desired to use or lease that house in connection with his storehouse, when he removed her to another house on his farm. After removing her two or three times from one place to another on his farm, during which time she was rendering him more or less service, he finally removed her to a house in the yard at his farm house, where she lived until his death, in the year 1897. Whilst living there, where Mr. Burdine kept a bed and furniture and spent from one-third to one-half of his time, the daughter managed his cows, kept the keys of his granary and crib, and looked generally after things around the house. During the last two years of his life, being old and feeble and unwell, and no other person living in the farm house, he slept much of his time in the daughter's house, and was waited on and cared for by her.

It is not shown that there was any contract between them during all this period other than that which the daughter is seeking to have enforced, or that either she or Mr. Burdine treated that agreement as at an end. Having retained her in his service until the expiration of the term, notwithstanding her acts of misconduct, for which she might have been discharged, but was not, they must be considered as having been waived or condoned by him. Wood on Master and Servant, section 123.

It is also urged in argument that the agreement cannot be enforced because it is founded upon an immoral consideration—

namely, for the future illicit association and cohabitation between Mr. Burdine and Roena, the mother.

There is evidence showing that improper relations had existed between Mr. Burdine and the mother, and that he had admitted that he was the father of the daughter, though not of her other children. There is also evidence tending to show that one reason why the mother left his house when she went to Washington county was that she might lead a different life. It does not appear, however, either from the agreement, or otherwise, that the consideration for the agreement was the future illicit cohabitation of the parties. It purports to be for services on her part which were lawful, and which were rendered.

In order, says Mr. Wood, in his work on Master and Servant, section 204 (2d Ed.), to render a contract void for illegality, it must necessarily involve the breach of a statute or of the common law, or be *contra bonos mores,* and when it may or may not be so, according to the circumstances, it will be presumed that it only involves the doing of a lawful and proper act, and will be sustained, as illegality is never presumed, but must be proved, or must clearly appear upon the face of the contract. *Trovinger* v. *McBurney,* 5 Cowan, 253; *Smith* v. *Du Bose,* 6 Amer. St. Rep. 260. The record does not show that the contract under consideration was made for immoral purposes.

We are of opinion that the daughter is entitled to the property which Mr. Burdine agreed to devise and bequeath her, and that the personal representative of the mother (who was made a party defendant to this suit by an amended bill) is entitled to the bank stock mentioned in the agreement of April 6, 1883.

We are further of opinion that the widow of N. E. Burdine is not entitled to dower in the land which he agreed to devise to the complainant. The agreement which bound him to make the devise was of record when the second marriage occurred. The rights which his widow acquired by that marriage were subordinate to those of the complainant. The title of a widow to dower

in her husband's land being derived through the husband, is liable to be defeated by every subsisting claim or incumbrance existing before the inception of her right, and which would have defeated the husband's seisin. 1 Scribner on Dower, 591, 594; 4 Kent's Com. 50; 2 Minor's Inst. 146-7 (4th Ed.); 1 Washburn Real Prop. 163.

It is well settled that, if a man, before marriage, enters into a contract for the sale of land, upon certain terms and conditions, and the terms and conditions are performed, his widow is not entitled to dower in the land, although the husband dies without making a conveyance. This is upon the principle that the husband is regarded, in equity, as a trustee for the purchaser. *Chapman* v. *Chapman,* 92 Va. 537; 1 Lomax Dig. ch. 2, sections 13 and 14 (101), side page.

And the same rule ought to apply when the husband has bound himself to make a devise to another for a valuable consideration, paid or furnished, and he has failed to do so; at least, in a case where the wife had knowledge of the agreement before marriage.

As no final decree can be entered by this court because of the consent decree for renting out the lands during the pendency of the suit, the decree of the Circuit Court dismissing the complainant's bill will be reversed, and the cause remanded to be proceeded with in conformity to the views expressed in this opinion.

*Reversed.*