## Richmond.

JOHN E. HUGHES COMPANY, INC. v. G. C. SHAW.

March 17, 1927.

1. APPEAL AND ERROR—*Questions of Fact for the Jury.*—The determination of the jury on questions of fact, if properly submitted, will not be disturbed on appeal.

2. ILLEGAL CONTRACTS—*Burden of Proof—Action by Agent for Salary and Commissions—Case at Bar.*—The instant case was an action by a foreign agent against his employer, a corporation, for salary and commissions. Neither the agent nor the former president of the corporation, who knew more about the transactions involved than anyone else, testified. Testimony for defendant was largely supplied by its president, who only became president after all but one of the contracts had been made. Defendant's defense was that the contracts, out of which plaintiff's claim for salary and commissions arose, were illegal.

   *Held:* That the burden was on the defendant to prove the illegality of the transactions.

3. ILLEGAL CONTRACTS—*Presumption of Innocence.*—Innocence rather than guilt is to be presumed in the affairs of life. When a contract may or may not be illegal, according to the circumstances, it will be presumed that it only involves the doing of a lawful and proper act and will be sustained, as illegality is never presumed, but must be proved, or must clearly appear upon the face of the contract.

4. APPEAL AND ERROR—*Presumption in Favor of Judgment of Trial Court.*—On appeal there is a presumption in favor of the judgment of the trial court, and in the instant case the plaintiff in error failed to overcome this presumption.

Error to a judgment of the Corporation Court of the city of Danville, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Leon M. Bazile,* for the plaintiff in error.

*E. Walton Brown,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

It is difficult to make a comprehensive and succinct statement of the facts in this case. Shaw, the plaintiff, who recovered in the trial court and who is a Chinaman, living in China, did not testify, was not present at the trial, the intimation being that he was deterred by the expense of travel which would have exceeded the amount of his claim. The former president of the defendant corporation was dead at the time of the trial, and only one of the other active managers of the corporation at the time of the transactions testified. Shaw, on the one hand, and these representatives of the corporation, on the other, knew more about the transactions involved than anyone else. The absence of the testimony of these witnesses makes uncertain some of the circumstances, which doubtless they could have explained.

Shaw sued for salary and commissions claimed to be due by the Hughes Company as compensation for his services and for negotiation of large sales of tobacco to a Chinese manufacturer, known as Nanyang Brothers Tobacco Company, Limited, of Shanghai, China. Before his employment at a salary of $200 per month and one-half of one per cent commissions, he had already sold 4,667 hogsheads of tobacco for sums aggregating more than $800,000. The agreed compensation for these sales is established by cablegrams. It would be a laborious and vain task to undertake to recite the numerous telegrams, letters, statements and details of each of these transactions. The account, with numerous

items, runs from December, 1921, to March, 1923. The evidence is confusing rather than conflicting.

Shaw sued for $3,072.68, with interest from June 30, 1923. There was a verdict in his favor for $2,505.61, with interest, which the trial court refuses to set aside.

The testimony which tends to support the plaintiff's claim is that of E. B. Young, who was treasurer of the Hughes Company during the period of all of the transactions except the last one, while the testimony for the company is largely supplied by W. C. Thomas, who did not become president of the Hughes Company until all but the last of the contracts had been made. It is significant that neither W. D. Powell the acting president of the company, at the time of these transactions, nor E. F. Magee, vice president, who represented the company at Shanghai during the period, were examined as witnesses.

[1] The case presents no novel questions of law, and the determination of the jury on the questions of fact, if properly submitted, will not be disturbed here.

There is sufficient evidence to support the verdict and judgment, so that the first and second assignments of error are overruled.

[2] The third assignment of error relates to the instructions and one of them is especially objected to, *i. e.*, the instruction marked "B," which reads:

"The court instructs the jury that if the defendant claims it entered into an illegal contract with plaintiff, the burden of proof is upon the defendant to show this clearly by the evidence and establish by the proof that it was the intention of the parties and one of the express terms and requirements of the contract that plaintiff should use the money represented by the item 'factory staff commission' for an illegal or immoral purpose; and further that the money was used and applied by plain-

tiff without the knowledge and consent of Nanyang Brothers as a secret bribe to induce the purchase of tobacco.

"The court further instructs the jury that all items of factory staff commission allowed and paid by defendant to plaintiff are concluded and cannot be disallowed or inquired into."

Emphasis is laid upon the fact that the court placed upon the Hughes Company the burden of showing that the "factory staff commissions" were to be used and applied by the plaintiff as a secret bribe to induce the Chinese company to purchase tobacco.

It may well be doubted, under the evidence in this case, whether there was testimony upon which any such instruction as to fraud could be based. Its chief foundation is the suspicion of the new president of the Hughes Company, together with his impression as to the meaning of "factory staff commission" used in the cablegram. There is no clear proof that there was any attempt at bribery, and it is well settled that unless the fraud appears from the plaintiff's testimony, honesty is presumed, and the burden is upon the defendant who relies upon fraud.

[3] In *Smyth Bros.* v. *Beresford*, 128 Va. 150, 104 S. E. 371, 375, this is said: "Innocence rather than guilt is to be presumed in the affairs of life. As stated in *Burdine* v. *Burdine*, 98 Va. 523, 36 S. E. 995, 81 Am. St. Rep. 741: 'When a contract may or may not be so, according to the circumstances, it will be presumed that it only involves the doing of a lawful and proper act and will be sustained, as illegality is never presumed, but must be proved, or must clearly appear upon the face of the contract.' "

The illegality here suggested and relied upon does not clearly appear, and hence the rule thus stated applies

here. The court committed no error against the Hughes Company in giving the instruction referred to, under the evidence in this case.

The witness, Thomas, admitted that he knew nothing about the former transactions, nor what the phrase "factory staff commission" was intended to cover. After having so testified, he was later allowed to say this, in answer to questions:

"Factory staff, as I understand it, means the people inside the Nanyang organization, and Mr. Shaw claimed he was paying one per cent to factory staff and I had no knowledge of it and did not think Mr. Kan did and I refused to pay it unless Mr. Kan said it was a proper charge."

On cross-examination, he was asked: "You did not personally know about the terms on which these tobaccos were sold?" A. "No, except what I have seen from the correspondence relative to it."

This correspondence and testimony, with whatever significance may be properly attached to it, was fairly submitted to the jury by other instructions, and they were told this by instruction No. 2:

"The court instructs the jury that if they believe from the evidence in this case that any one or more of the items for which Shaw is now asking judgment against the Hughes Company represented an amount paid, or claimed to have been paid, by Shaw to the employees of the purchaser of the tobacco in question by way of a secret commission or compensation to them without the knowledge or consent of their employer; that same was paid, or agreed to be paid for the purpose and with the understanding with said employees who received it, that the said employees would thereby make a secret profit out of the person who employed them, that then, even though the jury may believe that John E. Hughes

Company, Incorporated, agreed to pay said factory staff commission, such agreement to pay same was an illegal agreement and cannot be enforced in the courts, and as to any such item, the jury must find a verdict against the plaintiff."

So that the chief question of fact was sufficiently submitted.

[4] Viewing the case in its entirety, it seems to us clear that whatever doubt may arise under the evidence because of some confusion and the absence of those witnesses who knew most about the transactions, the plaintiff in error failed to bear the burden as to the alleged fraud which rested upon it in the trial court. In this court there is a presumption in favor of the judgment of the trial court, and this presumption the plaintiff in error has also failed to overcome.

We conclude, therefore, that there is evidence sufficient to support the verdict, and that there is no reversible error.

*Affirmed.*