(No. 19601.—

Fred W. Smith *et al.* Appellees, *vs.* Margaret N. Smith, Appellant.

*Opinion filed June 20, 1930.*

JAMES G. HOLBROOK, and DITTUS & CHATROOP, for appellant.

LAGGER & BLATT, for appellees.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Appellees, Fred W. Smith, Alfred Walter Smith, Cora Pearl Leimbacher and Ivy Lillian Treharne, children of James and Catherine Smith, filed their bill in the circuit court of Will county for specific performance of a written agreement executed by their father in his lifetime, after the death of their mother. By the terms of this agreement James agreed to convey in his lifetime (or to will) to appellees all of the real estate owned by him as of the date of the instrument. He died intestate and without having made any conveyance to appellees. Appellant, Margaret N.

Smith, to whom James was married subsequent to execution of the agreement and who survived him, was made defendant. The chancellor heard the cause and entered a decree in substantial accordance with the prayer of the bill. From this decree the present appeal was taken.

Catherine Smith died intestate on December 25, 1920, leaving her surviving as her sole heirs her husband, James, and appellees, her only children. At the time of her death she was admittedly seized of two pieces of real estate. Tract 1 was in Joliet and consisted of a two-story brick building containing five flats, three brick garages and two frame garages; also another two-story brick building with a store on the first floor and a flat on the second. Tract 2 consisted of two vacant lots in the city of Chicago. As a result of evidence which came to light at the time of the hearing, appellees claimed that Catherine was also seized of tract 3, being the Joliet property occupied by James and Catherine as a homestead. Appellant denied this and asserted that James held title to this property. The chancellor found that in her lifetime and at her demise Catherine was the owner in fee of tract 3, and this finding was amply warranted. At the time of Catherine's demise James owned tract "B," a Joliet property consisting of one two-story frame house and one two-story four-apartment brick building; tract "C," a Joliet property consisting of a three-story-and-basement brick building having two stores on the ground floor and two floors above; and tract "D," consisting of twelve vacant lots in Cook county. On January 22, 1921, appellees executed and delivered to James a quit-claim deed covering not only tract 1, tract 2 and the north 52.37 feet of tract 3, but also certain other pieces of the lands already owned of record by James. On that same date James executed, acknowledged and delivered to appellees the agreement upon which the present suit is based, and which is as follows:

"Whereas, the undersigned, James Smith, of the city of Joliet, in Will county, Illinois, is a widower and the father of four children, all of whom are now living and residing in the city of Joliet, in Will county, Illinois, and the names of such children are as follows: Fred W. Smith, Alfred Walter Smith, Cora Pearl Leimbacher, and Ivy Lillian Treharne; and

"Whereas, each of such children with their respective spouses have for a nominal consideration under quit-claim deed of this date, conveyed to said James Smith all their right, title and interest in and to said real estate heretofore in the name of Catherine Smith, the mother of said children and the deceased wife of said James Smith; and

"Whereas, the actual consideration for said conveyance was and is the agreement herein made by the said James Smith; and

"Whereas, it is the will and desire of said James Smith that said children shall each share equally in his estate, and that they shall have each an equal share in the real estate in the name of the said James Smith as of the date of this instrument:

"Now therefore, for and in consideration of the premises, including the execution and delivery of said quit-claim deed and of one dollar to said James Smith in hand paid by each of said children of said James Smith, the said James Smith does hereby agree in his lifetime either to convey to said children all of said real estate above mentioned in equal shares or by his will to be by him hereafter executed, to devise to said children in equal shares all of said real estate, and that he the said James Smith will further by his will, or otherwise, convey in equal shares to said children of said James Smith all of the personalty of which he, the said James Smith, may die seized; it being the intention of this memorandum to evidence an agreement on the part of the said James Smith to divide his estate in equal shares among his four children, either in his lifetime or by will, to become effective upon his decease, for and in consideration of the conveyance by said children to him, the said James Smith, of the real estate described in said quit-claim deed as of the date of this instrument.

"In witness whereof, the said James Smith has this twenty-second day of January, A. D. 1921, hereunto set his hand and seal at Joliet, Illinois.                                  JAMES SMITH (Seal)."

The deed to James and the instrument above quoted were recorded in the office of the recorder of deeds of Will county on February 7, 1921, the former as document number 333180 and the latter as document number 333181.

The marriage engagement between James and appellant was entered into the latter part of January, 1924, and the nuptials were solemnized on March 12 of that year. At that time James was seventy-two years of age and appellant was fifty-five. After the marriage James and appellant occupied the property described above as tract 3. At the time of her marriage appellant owned a lot on May street, in Joliet, and she had $2500 in cash. James contributed $4500 toward building a bungalow on this lot. The bungalow was rented and appellant has since received the income therefrom. James died on November 16, 1927, and appellant is still occupying tract 3.

Appellant insists that under the statute she is the owner in fee simple of one-third of all the lands which were held of record by James at the time of his demise and denies that appellees are entitled to the relief prayed by the bill. In support of this position appellant contends that the contract must be construed as having been made in contemplation of James re-marrying; that because an option was left in James to determine whether he would convey in his lifetime or devise by will, it cannot be said that the clear intent of the parties was to vest appellees with a then-present right to the properties involved in the transaction, and that these considerations make the agreement so indefinite and uncertain that it cannot be enforced by a court of chancery. We cannot accede to this argument. There is nothing in the record to show that the agreement was made in contemplation of re-marriage. On the contrary, in appellant's answer it is alleged that James "was persuaded to enter into this arrangement within thirty days after the decease of his wife, Catherine Smith, and during a time when he was under great mental stress owing to his very recent bereavement." Nor is it material that James was given an option as to the manner of carrying out the agreement. Where a valid contract is entered into to dispose of real property by will a trust is fastened upon it in favor of the promisee,

and this trust will be enforced against the heirs and personal representatives of the deceased. (*Klussman* v. *Wessling,* 238 Ill. 568; *Whiton* v. *Whiton,* 179 id. 32.) Where the contract is to convey by deed, the vendor, as to the land, becomes a trustee for the vendee, and subsequent holders of the property with notice will likewise be treated as trustees for the vendee. (*Forthman* v. *Deters,* 206 Ill. 159; *Lombard* v. *Chicago Sinai Congregation,* 64 id. 477.) If by an otherwise valid contract the promisor is bound to convey and to that end must employ one or the other of these specified methods to vest the promisee with the legal title, the same equities arise as though one particular method were named to the exclusion of the other. If the promisor fails to keep his agreement, these equities may then be enforced against such parties as may be in the position of trustees.

Appellant attacks the contract on the ground that the consideration was inadequate. It is the general rule that inadequacy of consideration, exorbitance of price or improvidence in a contract will not, in the absence of fraud, constitute a defense to a bill for specific performance. (*Chicago Title and Trust Co.* v. *Illinois Merchants Trust Co.* 329 Ill. 334.) The present record contains no evidence of fraud. Appellant insists, however, that there was such gross inadequacy of consideration as to show that the contract was unconscionable, and that such a degree of inadequacy calls for setting it aside. Appellees' experts stated the value of tract 1 as of January 22, 1921, to have been $22,000 to $23,500. Appellant's experts gave its value as of that date as $18,000 to $18,500. In her answer appellant admits that four apartments of tract 1 rent for $50 per month, each, and that one apartment rents for $20 per month; that the five garages in the rear would normally rent for $5 per month each, and that the store building rents for $90 per month. There is no dispute as to the value of the remaining property. Tract 2 was worth $1000, and the north 52.37 feet of tract 3, $9000. Having after the death of

Catherine only a dower interest in tracts 1, 2 and 3, the result of the transaction between James and appellees was to give James full title thereto, vesting him with his homestead as well as property returning a substantial income by way of rentals. Tracts "B" and "C," then owned by James himself, were worth $9000 and $30,000, respectively, while no value was stated for tract "D," also owned by him. In considering the argument based upon alleged inadequacy of consideration, it is essential to bear in mind the sound suggestion of Story that the value of a thing must be, in its nature, fluctuating, admitting of no precise standard, "and will depend upon ten thousand different circumstances," and that "if courts of equity were to unravel all these transactions they would throw everything into confusion and set afloat the contracts of mankind." (*Zempel* v. *Hughes,* 235 Ill. 424.) While there may sometimes be such gross inadequacy of consideration as to vitiate an agreement, such inadequacy must be such as shocks the conscience and amounts, in itself, to conclusive and decisive evidence of fraud in the transaction. (*Bear* v. *Fletcher,* 252 Ill. 206; *Kuehnle* v. *Augustin,* 333 id. 31.) The mere fact that one party may have "gotten something the best of" a transaction is not conclusive. (*Zempel* v. *Hughes, supra.*) Making due allowance for the principle that in this class of cases the ordinary rules which govern in actions to compel the specific performance of contracts and which furnish reasonable safeguards against fraud should be rigidly applied, (*Klussman* v. *Wessling, supra,*) it must be said that there is here no such degree of inadequacy of consideration as to warrant us in saying that the agreement was unconscionable.

Appellant contends that a bill for the specific performance of a contract to make a will cannot be maintained against intervening equities of a promisor's wife or children, citing *Davier* v. *Kaiser,* 280 Ill. 334, and *Woods* v. *Evans,* 113 id. 186. These cases go no farther, in effect,

than to apply the settled principle that before a contract of this character can be enforced its terms must be definite and the agreement must be clearly established. The agreement upon which this suit was brought meets this test. The general doctrine is that the wife's dower is liable to be defeated by every subsisting claim or incumbrance, in law or equity, existing before the inception of the title and which would have defeated the husband's seizin. (4 Kent's Com. 50.) Not even every conveyance made by a husband secretly on the eve of marriage is a fraud on the wife's rights. (*Daniher* v. *Daniher,* 201 Ill. 489.) Appellant's claim is based upon rights arising out of a marriage contracted over three years after the agreement executed by her husband. This agreement was recorded and she was affected with notice of appellees' equities. (*Burdine* v. *Burdine,* 98 Va. 515, 36 S. E. 992; Cahill's Stat. 1929, chap. 30, pars. 29, 31, 32; *Willoughby* v. *Lawrence,* 116 Ill. 11; *German-American Bank* v. *Martin,* 277 id. 629.) Appellant has pointed to no equities in her favor which should defeat appellees' suit. *Jarvis* v. *Jarvis,* 299 Ill. 89; *Newberry Co.* v. *Shannon,* 167 N. E. (Mass.) 292.

Appellant contends that error was committed in receiving certain testimony offered by the appellees and their respective spouses. Without passing upon this contention it is sufficient to say that the equities of appellees were amply established by other evidence competent in nature, and the decree must therefore be upheld. *Lingle* v. *Bulfer,* 322 Ill. 606.

The decree of the circuit court of Will county is affirmed.

Per Curiam: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*