GARNETT LEE HARRIS

*v.*

GRACE HARRIS, *et al.*

(CC 716)

Submitted January 9, 1947. Decided April 11, 1947.

*Ira M. Smith,* for plaintiff.

*Burton, Sanders & Shaffer,* for defendants.

HAYMOND, JUDGE:

This suit in equity was instituted in the Circuit Court of Mercer County by Garnett Lee Harris, as plaintiff, against Grace Harris, James G. Harris and Aster G. Harris, an infant, as defendants, for the assignment of dower to the plaintiff in the real estate of her deceased husband, Gust D. Harris. To the bill of complaint of the plaintiff the defendants filed a demurrer and an answer and later an amended and supplemental answer. The plaintiff filed a demurrer to the answers of the defendants. The demurrer of the defendants to the bill of complaint was sustained. The demurrer of the plaintiff to the answer and the amended and supplemental answer was overruled. On joint application of the parties, the Circuit Court certified its rulings on the demurrers to this Court.

The plaintiff is the widow of Gust D. Harris, who died intestate in Mercer County, West Virginia, on June 24, 1946. The defendant, Grace Harris, is the divorced former wife of Gust D. Harris, and the defendants, James G.

Harris and Aster G. Harris, are the children of Grace Harris and Gust D. Harris, and his only heirs at law.

The pleadings disclose these material facts. Gust D. Harris and the defendant Grace Harris were married April 4, 1924, and they lived together as husband and wife until a short time prior to March 28, 1941. Marital differences having arisen between them, Gust D. Harris, on March 28, 1941, instituted a suit for divorce against Grace Harris in the Circuit Court of Mercer County. Grace Harris made no appearance or defense in the suit and by decree entered June 3, 1941, Gust D. Harris was granted an absolute divorce. That decree made no provision for the maintenance and the support of Grace Harris or the two children of the marriage and automatically barred her right of dower in the real estate of Gust D. Harris.

At the time of the institution of the suit for divorce a written contract was entered into between Gust D. Harris, as party of the first part, and Grace Harris, as party of the second part. The contract, a copy of which is exhibited with the bill of complaint, recites that the parties, though husband and wife, were separated; that the husband had instituted suit for divorce against the wife, and that he desired to make provision for the maintenance and the support of his wife and his two children. It then states that the husband should furnish to Grace Harris four rooms in the building where she and the children were then residing, as their home, and supply them with light, heat and water; that he would pay to Grace Harris thirty dollars a month, to commence on April 1, 1941, and to continue while the wife should remain unmarried, and would also provide books, school supplies and necessary medical services for his children. It further states that, in the event of the sale of the property in which his wife and children were then living, the husband would provide a suitable home for them and that the wife should retain the custody of the children subject to the right of the husband to visit them at reasonable times. The con-

tract also contains a final paragraph, which has given rise to this controversy, and which is couched in this language: "In the event of the death of the party of the first part, all of his property, after the payment of any debts he may owe, shall be divided equally between the party of the second part, and their two children."

After Gust D. Harris was granted the divorce from Grace Harris, he performed the obligations imposed upon him by the contract until his death, except that he made no conveyance, transfer, or will to carry into effect the above quoted provision of the contract. On June 15, 1945, more than four years after he had obtained a divorce from Grace Harris, he married the plaintiff, Garnett Lee Harris, and they lived together as husband and wife until his death.

On February 2, 1935, while Gust D. Harris and Grace Harris were living together as husband and wife, he purchased real estate designated as Lot No. 7, Section 127, in Princeton, Mercer County, West Virginia. A brick building is located on the land, and the property, including the building, is alleged to be worth approximately $20,000.00. Gust D. Harris held the legal title to this real estate at the time of his death.

The ground advanced in support of the demurrer of the defendants to the bill of complaint is that Gust D. Harris was not seized of an estate of inheritance in the foregoing real estate at the time of his death because the contract operated to deprive him of an estate of that nature. The demurrer of the plaintiff to the answer and the amended and supplemental answer of the defendants challenges their sufficiency on the ground that they do not allege that Gust D. Harris was not seized of an estate of inheritance in fee simple in the real estate.

The sole question presented is whether the agreement between Gust D. Harris and Grace Harris deprives the plaintiff, as his widow, of dower in his real estate.

Contracts of the character of the agreement here in

suit have produced extensive litigation. In some of the decided cases the contract involved provided that the owner of the property should effectuate its purpose by means of a will; in others the contract required a conveyance of real estate or a transfer of personal property.

The contract involved in this case does not indicate the method by which Gust D. Harris intended to vest title to his property in his former wife and the two children. It is not effective as a testamentary disposition of property. In so far as it makes provision for the payment of his debts and permits the alienation of his real estate, if he substituted for it a suitable home for his former wife and the children, it possesses the characteristics of a will.

The principles which apply to a contract to make a will and to a parol contract to convey and transfer property are substantially the same. *Davidson* v. *Davidson,* 72 W. Va. 747, 79 S. E. 998. For statements of the rule applicable to contracts to convey which deal with variant facts, see *Hurley* v. *Beattie,* 98 W. Va. 125, 126 S. E. 562; *Chapman* v. *Chapman's Trustees,* 92 Va. 537, 24 S. E. 225; *Price* v. *Craig,* 164 Miss. 42, 143 S. E. 694; *Newberry Co.* v. *Shannon,* 268 Mass. 116, 167 N. E. 292, 63 A. L. R. 133; *Ruch* v. *Ruch,* 159 Mich. 231, 124 N. W. 52. The contract here involved may properly be treated as a contract by Gust D. Harris to will his property to the defendants. A contract of that nature is controlled by the same rules and principles as any other valid contract and, when certain and definite in its terms, and upon sufficient consideration, if equitable, it is valid and enforceable.

Before determining the effect of the contract with respect to the right of dower asserted by the plaintiff, an inquiry concerning its validity is necessary to ascertain whether it is based upon sufficient consideration, whether it is certain and definite, whether it is equitable, and whether the statute of frauds applies.

The contract here in suit was entered into between the parties for the purpose of concluding a property settle-

ment by persons who then occupied the relation of husband and wife and who, at the time, contemplated a divorce. It is obvious that Gust D. Harris did not desire to submit to the court, in the divorce proceeding, any questions of alimony for his wife or of support and maintenance of the children, and that he preferred instead to arrange those matters by a contract which provided that upon his death his property should belong to them. As consideration for the agreement upon the part of Gust D. Harris his then wife, the defendant Grace Harris, relinquished valuable rights which she could have asserted in the divorce suit. Nothing appears from the contract, or the alleged facts and circumstances under which it was entered into, to indicate that it is inequitable. An agreement between a husband and a wife, who are separated at the time it is made, which does not disclose any injustice, inequity, or other vitiating circumstances, is presumptively valid. *Smith* v. *Smith,* 125 W. Va. 489, 24 S. E. 2d 902.

There is no uncertainty with respect to the provisions of the contract between Gust D. Harris and Grace Harris here under consideration. It is certain and definite in all its terms and provisions. By it he agreed to give all of his property to Grace Harris and the children after the payment of his debts. Though the contract states that the property should be divided equally between Grace Harris and his two children, "in the event of his death," the quoted language imports no uncertainty. That death will come to every human being is certain, though the time of death is always uncertain. By the use of the words just quoted Gust D. Harris intended them as the equivalent of, or to mean, "at the time of his death," or "when his death occurred." The intention of the parties to the contract was that Gust D. Harris should give to Grace Harris and the two children the property which he owned when the contract was signed. Though under the contract Gust D. Harris had the right to use his property, and to sell and convey it provided he furnished a suitable home for the defendants, that feature of the contract

does not extinguish the obligation it imposed upon him to give his property, or such of it as remained, to his former wife and their children at his death. The right to dispose of property covered by or subject to a contract to make a will may be reasonably exercised if not in fraud of the beneficiary. *Sample* v. *Butler University*, 211 Ind. 122, 4 N. E. 2d 545, 108 A. L. R. 857. He who makes such contract, however, may not make an unreasonable disposition of his property to defeat its purpose, or any disposition of it with intent to defraud the beneficiary.

The contract here in suit, being in writing, is not within the statute of frauds and is not unenforceable because of the statute.

The plaintiff apparently does not question the validity of the contract. Her contention is that it does not operate to defeat her dower in the real estate of her deceased husband.

The plaintiff cites and relies upon the case of *Owens* v. *McNally*, 113 Cal. 444, 45 P. 710, 33 L. R. A. 369, to support her position that the contract does not operate in bar of her claim or right of dower in the real estate of Gust D. Harris. In that case a parol contract by an uncle for the benefit of his niece provided that he should give or bequeath to her all property which he might own at the time of his death in consideration of services which she should perform for him. The Court refused specific performance of the contract on the grounds that it would result in hardship to the wife of the uncle who married him after the contract was made and without any knowledge of its existence. The rule of that case does not here apply for the reason that the facts in that case materially differ from the facts alleged in the pleadings in this suit. In *Davidson* v. *Davidson*, 72 W. Va. 747, 79 S. E. 998, this Court refused to enforce a contract which was considered uncertain and indefinite, but, in that case, it recognized the effective and binding character of contracts to make a will.

The right of a surviving spouse to dower in real estate in this jurisdiction is governed and regulated by statute. Code, 43-1-1, provides: "A surviving spouse shall be endowed of one-third of all of the real estate whereof the deceased spouse, or any other to his or her use, or in trust for him or her, was, at any time during the coverture, seized of or entitled to an estate of inheritance, either in possession, reversion, remainder, or otherwise, unless the right of such surviving spouse to such dower shall have been lawfully barred or relinquished." Other statutory provisions dealing with dower which are contained in Sections 2 and 3, Article 1, Chapter 43 of the Code, 1931, do not apply to the facts disclosed by the pleadings. One of the requisites of dower is that the deceased spouse shall have been seised of an estate of inheritance during coverture.

The contract between Gust D. Harris and Grace Harris was valid, equitable, and based upon a valuable consideration which inured to him during his lifetime, and by the contract he was bound, in equity and good conscience, to carry out its requirement by making a will. That he did not do so does not alter the situation as the rights of the parties to the contract are based upon and controlled by well settled principles of the law of contracts *Turner* v. *Theiss,* 129 W. Va. 23, 38 S. E. 2d 369. He could not dispose of his property in any manner other than that provided by the contract. In that situation it is not the function or the purpose of the law to defeat or thwart his purpose in entering into the contract or to permit the rights of the beneficiaries under it, who performed the obligations imposed upon them for his benefit, to be violated or extinguished.

In dealing with a question similar to that which here arises, the Supreme Court of Appeals of Virginia, in the case of *Burdine* v. *Burdine,* 98 Va. 515, 36 S. E. 992, uses this pertinent language:

"The agreement which bound him to make a devise was of record when the second marriage

occurred. The rights which his widow acquired by that marriage were subordinate to those of the complainant. The title of the widow to dower in her husband's land, being derived through the husband, is liable to defeat by every subsisting claim or incumbrance existing before the inception of her right, and which would have defeated the husband's seisin."

In *Smith* v. *Smith,* 340 Ill. 34, 172 N. E. 32, specific performance was decreed of a written contract, made by a widower more than three years before his remarriage, to convey or devise all his property to his children, and the claim of the wife to dower in the real estate was denied. In the opinion the Court uses this language:

"The general doctrine is that the wife's dower is liable to be defeated by every subsisting claim or encumbrance, in law or equity, existing before the inception of the title and which would have defeated the husband's seisin. 4 Kent's Com. 50. Not even every conveyance made by a husband secretly on the eve of marriage is a fraud on the wife's rights. *Daniher* v. *Daniher,* 201 Ill. 489, 66 N. E. 239. Appellant's claim is based upon rights arising out of a marriage contracted over three years after the agreement executed by her husband. This agreement was recorded, and she was affected with notice of appellees' equities."

Under the contract, the right to have the property held by Gust D. Harris at the time of his death belonged to his former wife, Grace Harris, and their two children. After it was made he held the legal title to the real estate in trust for their benefit until his death. *Burdine* v. *Burdine,* 98 Va. 515, 36 S. E. 992; *Dillon* v. *Gray,* 87 Kan. 129, 123 P. 878. When he died he held no estate of inheritance. By the contract, and at the time it was entered into, he effectively disposed of the equitable title to the land, and at no time during his marriage to the plaintiff was he seised or possessed of an estate of inheritance in the real estate to which her right of dower could attach. 1 Scribner on Dower, 2d Ed., 583.

The principle is well settled that a valid contract for the sale of land transfers the equitable title to the land from the vendor to the vendee within the maxim that equity regards as done that which ought to be done. *Sale* v. *Swann,* 138 Va. 198, 120 S. E. 870. The equitable title to real estate passes from the vendor to the vendee when a valid contract for the sale of land is made. Pomeroy's Specific Performance of Contracts, 3rd Ed.; Section 314. When the owner of land enters into a written agreement with another by which he sells and the other buys the land, and the owner is to execute a deed for the property when it is fully paid for, the purchaser becomes the equitable owner and the vendor holds the legal title in trust for the purchaser. *Biddle Concrete Company* v. *McOlvin,* 90 W. Va. 760 111 S. E. 843.

In *Burdine* v. *Burdine,* 98 Va. 515, 36 S. E. 992, this pertinent language appears: "It is well settled that if a man, before marriage, enters into a contract for the sale of land, upon certain terms and conditions, and the terms and conditions are performed, his widow is not entitled to dower in the land, although the husband dies without making a conveyance. This is upon the principle that the husband is regarded in equity as a trustee for the purchaser. *Chapman* v. *Chapman's Trustee,* 92 Va. 537, 24 S. E. 225; 1 Lomax, Dig. c 2 §13, 14 (side page 101)."

The contract between Gust D. Harris and Grace Harris is analogous, with respect to the immediate transfer of the equitable title to the property, to a contract for the sale of land. Its effect was to pass, at the time it was entered into on March 28, 1941, the equitable title in the real estate of Gust D. Harris from him to his former wife, Grace Harris, and the two children. As this transfer of the equitable title occurred in good faith more than four years before any rights accrued to the plaintiff, as his wife or otherwise, no estate in the property existed in Gust D. Harris at the time of his marriage to the plaintiff which could support any right of dower in her in any of his real estate.

An estate of inheritance in real estate is an estate which may descend to heirs. 1 Washburn Real Property 51. It can not be successfully asserted that after Gust D. Harris had entered into the written contract of March 28, 1941, he was seised of an estate in his land that would, upon his death, descend to his heirs. "Since the dower of a widow is a mere continuance of the estate of her husband, if his estate were less than one of inheritance, her right could not extend beyond his own life." 28 C. J. S., Dower, Section 21.

The plaintiff alleges in her bill of complaint that she was not a party to the contract between Harris and his former wife and that she had no knowledge of its existence at the time of her marriage. The first statement is of no importance. The second statement calls for consideration. In response to it, the answers of the defendants aver that the contract was recorded in the office of the Clerk of the County Court of Mercer County on July 7, 1941. The pleadings also indicate that the defendants occupied a part of the building located on the land owned by Gust D. Harris from the date of the contract until the institution of the suit and that their occupancy existed when the plaintiff and Harris were married on June 15, 1945. This unusual situation should have come to the attention of the plaintiff, and it was incumbent upon her to make inquiry concerning it. It would naturally suggest an arrangement between Gust D. Harris and his divorced wife pursuant to which she and his children resided in a part of his property. It may reasonably be inferred that even a slight amount of curiosity in the plaintiff would have led her to discover the existence of the agreement, which having been recorded, she could have examined. Whether the plaintiff, before her marriage to Gust D. Harris, did or did not have notice of the existence of the agreement, is, in view of the facts disclosed by the pleadings, of no consequence. If she did not know that there was such an agreement, her lack of knowledge can not sustain her claim. Marriage confers rights only in property which a spouse holds beneficially

at the time of the ceremony. *Newberry Co.* v. *Shannon*, 268 Mass. 116, 167 N. E. 292; *Dillon* v. *Gray*, 8 Kan. 129, 123 P. 878.

This Court fully recognizes the consideration which the law accords to the right of dower of a spouse and the protection which it furnishes for its preservation and its full use and enjoyment whenever its existence is established. The question of the destruction or the termination of an existing right of dower, however, is not here involved. In this case no right of dower ever accrued or existed in favor of the plaintiff for the reason that at the time of her marriage to Gust D. Harris he owned no estate to which the right of dower did or could attach.

For the reasons stated the rulings of the Circuit Court of Mercer County are affirmed.

*Rulings affirmed; case remanded.*

KENNA, JUDGE, concurring:

I am of the opinion that this case certified should be dismissed as improvidently docketed because the certification does not raise a definite question of law for the decision of this Court, but attempts to bring here the whole case of *Garnett Lee Harris* v. *Grace Harris and others* for final decision on bill and answer considered together. This I believe is an improper certification. See 3 Am. Jur. 759, *et seq.* The Circuit Court of Mercer County sustained the demurrer to the bill of complaint and then, instead of complying with the provisions of Code, 58-5-2, which expressly require that upon certification "further proceedings in the case" shall be stayed "until such question shall have been decided and the decision thereof certified back," the court proceeded to consider the demurrer to the answer. The proceeding was not stayed upon sustaining the demurrer to the bill. Upon overruling the demurrer to the answer, in its opinion there being no good bill of complaint before the court, the circuit court entered an order certifying to this Court no specific questions of law, but only the sufficiency of both the bill and

the answer upon the assigned points of demurrer. This Court has considered the certification as a case submitted for final decision upon bill and answer. To my mind this method of procedure is plainly not in compliance with our statute governing cases certified and the consent of counsel cannot enlarge the jurisdiction of this Court thereunder.

However, treating the matter as a proper case certified upon demurrer sustained as to the bill of complaint and overruled as to the answer, the holding of the circuit court in effect was that the second wife of decedent Harris was not vested with dower consummate in the real estate of which he died seised of the legal title. With this conclusion I agree, but am of the opinion that the questions certified, since they relate separately to both the bill of complaint and to the answer, should be accordingly treated by this Court in order that the general questions propounded by the circuit court may be more distinctly answered.

The bill of complaint avers that Harris died seised of an estate of inheritance in Lot 7, Section 127 of the City of Princeton and that the plaintiff was his wife at the time of his death. It also alleges a separation agreement dated and recorded before his marriage to the plaintiff, Garnett Lee Harris, that bound him to leave all his property to his former wife and their two children. The bill of complaint does not allege the time that he acquired title to the property in controversy. Under its allegations it could have been acquired before or after the separation agreement dated March 28, 1941, became effective. The bill of complaint, however, does allege that he died seised of an estate of inheritance in that property and therefore under the Court's opinion, but probably not under Syllabus 2, the title was acquired by Harris after the separation agreement went into effect. That contract plainly applied to the property owned at the time of its execution, but did it apply also to every piece of real estate that he might during the remainder of his lifetime

acquire, regardless of its value? In other words, did that agreement automatically wipe out the estate of dower of his second wife in all after acquired property? I think not. It must be remembered that the contract was made in contemplation of divorce and obviously in lieu of alimony and a property settlement in that proceeding. Divorce, of course, wipes out dower, but with that we are not here concerned. The question that arises on the sufficiency of the bill of complaint is: Did the separation agreement of March 28, 1941, include all property of which Harris might become the owner between that date and his death? If it did not include after acquired property of which Harris died seised, then the demurrer to the bill of complaint should not have been sustained because its allegations and prayer are broad enough to include property of that nature. If the separation agreement did cover after acquired property as well as property that Harris owned when it was executed, then the demurrer was properly sustained. The Court's opinion at one point states that it was the intention of the parties to the separation agreement to bind Harris to give to his former wife and his two children all of the property that he owned when that contract was signed. I agree with that conclusion and I believe that any doubtful construction of that contract should be resolved against the restriction of alienation, and the well nigh insuperable difficulties that would arise upon vesting infants with an equitable interest in all property thereafter held in the name of Harris, thereby likely requiring the intervention of a court of chancery in every business transaction affecting the property of Harris after March 28, 1941. I do not believe, however, that Syllabus 2 of the Court's opinion conforms with this viewpoint. In my opinion the term "all of his property" as used in the separation agreement should be construed to mean the property owned by him at the time of its execution, and not to speak as of the time of his death as wills do under Code, 41-3-1. Under the allegations of the bill Harris died seised of an estate of inheritance in Lot 7 of Subsection

127 of the City of Princeton leaving the plaintiff as his widow, and since I believe the separation agreement affected only the property that he owned at that time, the bill of complaint not alleging when Lot 7 was conveyed to him, in my opinion the bill of complaint was a good bill and it was error to sustain the demurrer thereto.

The answer, I believe, is also good. It clearly alleges that Harris became the owner of Lot 7 in Subsection 127 in 1935 when he was married to his first wife; that he owned it when the separation agreement was entered into; and that he owned it at the time of his death. Under the averments of the answer plainly title was acquired by him before the separation agreement was executed and it was plainly subject to its terms because then owned by him. That property was charged with whatever burden was created by the separation agreement and the plaintiff by her marriage to Harris could acquire no right which was not subject to its terms, of which she had constructive notice, it having been recorded in the county clerk's office of Mercer County before her marriage to Harris. The answer makes it plain that this case does not involve property acquired by Harris after the date of the separation agreement.

I would hold that the bill of complaint and the answer are both good and that the general questions certified should be accordingly answered. Otherwise the Circuit Court of Mercer County and this Court are in what I believe to be the rather anomalous position of holding that the bill of complaint is bad and yet that it was answered by a good pleading.

I question the correctness of the treatment of the separation agreement in the Court's opinion, particularly that part that takes the position that it has the effect of preventing Harris from owning an estate of inheritance in land, after acquired or otherwise. Perhaps it is rather finespun, but in my opinion it would be more sound to speak of it as being a charge or an encumbrance upon land owned by him at the time. Of course under our well

known statute title to land can be transferred only by deed or will. That being so, I seriously doubt whether a person can change the nature of an estate in land by the execution of a paper of a lesser dignity. I have been unable to find a discussion in the books and since the question has no effect upon the result in this matter I wish only to comment upon my own uncertainty concerning it.