No. 20411.

FLORENCE NEWBY TARR *v.* RUTH E. HICKS, ET AL., ETC.
(393 P.2d 557)

Decided June 22, 1964.    Rehearing denied July 13, 1964.

160

Mr. HARRY L. SILVERMAN, for plaintiff in error.

Mr. ALDEN T. HILL, for defendants in error Ruth E. Hicks and Ralph H. Coyte as administrator with will annexed of the Estate of Bryant N. Newby, Jr., Deceased;

Messrs. REYNOLDS and CONNELL, Mr. CARL W. BERUEFFY, Mr. LARRY W. MORAN, for defendants in error, George Newby, Lillian Gay, Grace Pruitt, Kate Ecton, C. A. Romigh, Helen Williamson, Estelle Johnston, and Lola Romigh.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

ON March 13, 1933, Bryant N. Newby, Sr., (herein referred to as Newby, Sr.) the then owner of valuable real property, by warranty deed conveyed the same to his wife, Anna F. Newby (herein referred to as Anna). By this deed, if valid, Newby, Sr., divested himself of the ownership of said property. He died intestate and without property on May 16, 1937. At the time of his death he left as his heirs at law: (1) His wife; (2)

George Newby, May Romigh, Lillian Gay, Grace Pruitt and Kate Ecton — children of Newby, Sr., by a former wife — stepchildren of Anna (herein referred to as the stepchildren); (3) Bryant N. Newby, Jr., (herein referred to as Newby, Jr.) and Florence Tarr (herein referred to as Florence), children of Newby, Sr., and Anna.

Following the death of Newby, Sr., an attorney representing the stepchildren notified Anna that the deed which she had received from her husband was invalid, could be set aside and proceedings for such purpose would be commenced unless the matter was promptly adjusted.

Following this threat, conferences were had between all the heirs of Newby, Sr., and their attorneys. As a result of these conferences a three-party agreement was entered into and signed on May 2, 1938. This agreement purported to define and was intended to define the rights and duties of all of the heirs.

In this agreement Anna is designated as the party of the first part; George Newby, May Romigh, Lillian Gay, Grace Pruitt and Kate Ecton (the stepchildren) as parties of the second part, and Newby, Jr., and Florence as parties of the third part.

The agreement contains several opening paragraphs wherein are recited reasons for the agreement. Therein reference is made to the deed, the validity of which had been questioned; to the fact that Newby, Sr., at the time of his death left no property requiring probate or administration of his estate, and in addition contains the following:

" * * * certain disputes and differences have arisen among the parties hereto regarding the rights of each as the heirs of the said Bryant N. Newby, Sr., deceased; and

"WHEREAS, all of the parties hereto are desirous of compromising and adjusting the said differences and disputes, in order finally to determine and settle all of

such disputes and differences, and any and all rights which any of the parties hereto may or might have as heirs of the said Bryant N. Newby, Sr., as aforesaid, and all other disputes and differences among themselves;

"NOW, THEREFORE, in consideration of the premises, and of the mutual acts, promises and covenants hereinafter set forth, to be done or performed by the parties hereto,

"IT IS AGREED AS FOLLOWS:"

In substance, the agreement provides that:

1. All the parties confirmed and ratified the deed to Anna, the validity of which was questioned.

2. Anna agreed to make her Will whereby she will give to the stepchildren, *their heirs and assigns collectively,* one-half of her estate and to her children, *their heirs and assigns collectively,* the other one-half, and that in said Will she would specifically devise the real property conveyed to her by Newby, Sr.

3. Said Will should be deposited in the office of her attorney and "shall remain in full force and effect until the death of the said Anna F. Newby, and shall not be changed * * *."

4. " * * * so far as possible" Anna would maintain her estate in its then condition.

5. On giving notice and by compliance with certain conditions designed to protect and preserve the interests of the children and grandchildren Anna could sell the property.

6. In the event of a sale the proceeds be placed in trust, primarily to the end that the interests of the children and grandchildren be preserved. That Anna have the possession and use of the property, and in the event of sale that she receive the income from the proceeds of such sale, and in the event that the income from the property or from the proceeds of a sale thereof be inadequate for her "reasonable maintenance" she might draw from the "principal of said trust fund" such amounts as were necessary for her reasonable maintenance.

7. The children and stepchildren assign to Anna all rights that they might have to the estate of Newby, Sr.; that there be no probate of his estate; that any advancements received from Newby, Sr., by any of the parties should be considered as gifts, and that " * * * no one of the parties hereto shall have any claim against any other by reason of such gifts or advancements."

8. "Each of the parties of the second and third part agree that they will, at all times, treat the party of the first part with respect and consideration and they will not request from her any personal loans or advancements."

On June 20, 1938, Anna made her Will. This Will was prepared by her attorney, the attorney who represented her at the time the validity of the deed from Newby, Sr., was questioned and at all times during negotiations which culminated in the aforesaid three-party agreement.

Without question, Anna, in making this Will, intended to comply with the terms of her contract, and the only variation between the Will and the contract is the fact that instead of, as provided in the contract, giving to her two children, "their heirs and assigns," they to receive "collectively" an undivided one-half of her estate, and giving to her five stepchildren, "their heirs and assigns," they to receive "collectively" an undivided one-half of her estate, she by her Will gave to *each child* an undivided one-fourth and to *each stepchild* an undivided one-tenth " * * * to have and to hold the same to her [him] and her [his] heirs at law, absolutely and forever."

Anna died April 8, 1957. Her Will was admitted to probate and The First National Bank of Longmont, nominated in the Will as Executor, was appointed Executor by the court, and as such has sold the real property involved and is holding some $70,000.00 for distribution to those entitled thereto.

After execution of the agreement and prior to the

death of Anna, Newby, Jr., died. Any rights that he may have acquired by virtue of the agreement or the Will of Anna are vested in the defendants in error Ruth E. Hicks and Ralph H. Coyte.

After execution of the agreement and prior to the death of Anna, May Romigh died, and whatever rights that she may have acquired by virtue of the agreement or the Will are vested in the defendants, C. A. Romigh, Helen Williamson, Estelle Johnston, and Lola Romigh, heirs and successors of May Romigh.

Shortly after the Will was admitted to probate the First National Bank of Longmont petitioned the county court for construction of the Will. The county court entered judgment construing the Will. Appeal from this county court judgment was taken to the district court and that court entered judgment construing the Will.

Final disposition of proceedings for construction of the Will is to be found in *In Re Estate of Newby,* 146 Colo. 296, 361 P.2d 622, decided April 24, 1961, rehearing denied May 22, 1961. The above case should be considered in connection with the case now before us.

In June of 1961, Hicks and Coyte, successors to the interests of Newby, Jr., commenced this action, wherein they seek a one-fourth interest in the estate of Anna. Their claim is predicated on the contract and the failure of Anna — through oversight, lack of understanding, or otherwise — to make a Will in strict legal conformity with the contract.

The stepchildren and the heirs and successors of the deceased stepchild, May Romigh, answered the complaint and took the same position as Hicks and Coyte, and asked for similar relief.

Florence, in her answer to the complaint, contends (1) that the Will of Anna is in conformity with the contract, and (2) if not in conformity therewith, varies therefrom only in that said Will does not bequeath and devise to the children as a class or to the stepchildren

as a class, and that none of the plaintiffs is a member of or a survivor of either class; (3) that the contract was entered into "without consideration of any kind whatsoever from * * * Newby, Jr. and * * * Florence * * * "; (4) that neither Newby, Jr., nor May Romigh acquired any interest in the property by virtue of the agreement, and bequests made to them in the Will of Anna lapsed by reason of their predeceasing Anna, and (5) that plaintiffs' claim accrued more than six years prior to commencement of this action to recover thereon and is consequently barred by the six-year statute of limitations.

The Executor answered and took no position other than to express a desire to distribute the estate to those entitled thereto and as provided by law.

Trial was to the court without a jury. The trial judge made extensive FINDINGS OF FACT and CONCLUSIONS OF LAW, wherein appears the following:

"That said agreement, Exhibit A, is and was at the time of its execution, a valid contract, duly executed, for valuable consideration, and has continued in full force and effect at all times since its execution, and is binding upon all parties thereto;

"That said agreement was entered into in order to avoid disputes and litigation and to compromise claims between Anna F. Newby and her five step-children who questioned the validity of a certain deed of conveyance from Bryant N. Newby, Sr., to Anna F. Newby to the property described in said agreement;

"That * * * the rights, and considerations, given and surrendered by said agreement, were individual rights, and that such rights and interests were for the benefit of those individuals signing said agreement or their successors in title and interest, and that such rights and interests were assignable, and descended by operation of law to the beneficiaries of the estate of any of said parties who might thereafter die;

"That since the rights under said agreement are con-

tractual and supported by consideration, these rights and the interest in the property evidenced thereby are not lost by death of a party thereto, but are a part of the estate of the party dying, exactly the same as any other interest in property;

"That it was the intent of all parties to said agreement immediately to vest in the individuals signing said agreement an interest in the property described in the agreement, and that such was the effect of the agreement;

"That the requirement in said agreement that a Will be made by Anna F. Newby, was only the vehicle chosen as a means of making record title to said property in the second and third parties to said agreement, on the death of Anna F. Newby, while preserving to Anna F. Newby during her lifetime the apparent ownership of the property described in said agreement;

\* \* \*

"That by entering said agreement, Anna F. Newby obtained the use and benefit of the entire property described in said agreement during her lifetime; and by the same agreement the children and stepchildren of Anna F. Newby, second and third parties in said agreement, acquired a vested interest in the real property, the ownership of which was impressed with a trust for the benefit of second and third parties to said agreement, with an immediate fixed right in them to future enjoyment of said property upon the death of Anna F. Newby;

"That the interpretation of the Supreme Court of the State of Colorado that the words 'to have and to hold to him (her) heir absolutely and forever' in the Will of Anna F. Newby were words of limitation and not of substitution, and the holding of the Supreme Court that the interests of Bryant N. Newby, Jr., and May Romigh in the estate of the testatrix, both of who pre-deaceased [sic] the testatrix, lapsed by operation of law establishes that Anna F. Newby did not comply with the terms of

her agreement, Exhibit A; and thus her contractual obligation was not fulfilled, even though she endeavored and intended so to do by her said Last Will and Testament;

"That Anna F. Newby did not intend to deprive Bryant N. Newby, Jr., and May Romigh, or their lawful heirs and assigns of their interests in her estate; that this Court is now interpreting an agreement — not a will or deed — and that by the words, 'their heirs and assigns' in the agreement, Exhibit A, is meant persons taking alternatively or as substitutes, and such words could not and do not relate, to the extent of the estate to be conveyed or devised, but to the parties who were to take in the event of death;

"That any event, whether it was intentional or unintentional, which deprives the parties of the second part and the parties of the third part in said agreement of their vested interests, either by will or otherwise, is a breach of the agreement; that the only remedy available to plaintiff and cross-complainants is by the suit to enforce the contract by specific performance, and to impress a trust on assets in the hands of the executor. There was a contractual obligation on the part of the testatrix which could not be avoided at the time she made her will. Since the will she executed did not comply with the terms of the contract, she subjected her estate to this action to enforce the terms of the contract; that until the death of Anna F. Newby, there was no breach by her of said agreement and that action was brought in apt time; * * *."

The judgment of the court provided that the property be divided as specified in the agreement, those living to get their share as therein provided, and that the portions allocated by the agreement to the two deceased parties to go to their respective heirs or legatees.

Florence is here by writ of error seeking reversal and urges as reasons therefor:

1. Error in refusing to permit her to testify on the

ground that to do so would be in violation of the so-called "Dead Man's Statute."

2. Error in refusing to permit Jack Tarr, husband of Florence, to testify concerning lack of consideration for the agreement.

3. That the agreement did not convey anything or vest any title in any party, and therefor Coyte had no interest in the matter, was not a proper party and the court erred on denying Florence's motion to "drop" him as a party.

4. That the trial court erred in admitting in evidence letters exchanged between attorneys for Anna and attorneys for the stepchildren and in admitting in evidence three drafts of contracts which were revised, amended and changed to conform to the intent of the parties and were followed by the contract which was signed and incorporated the changes made in the earlier drafts.

5. Error in holding that the Will did not comply with the contract.

6. That there was no consideration from Newby, Jr., or Florence for Anna's agreement to make a Will and therefor the purported agreement is not enforceable.

We shall consider assigned errors 1, 2, 3 and 6 together. Counsel sought by witnesses, Florence and her husband, to prove that there was no consideration flowing from Newby, Jr., or Florence to Anna to support Anna's agreement to make a Will. We need not determine whether Florence was precluded from testifying because of the Dead Man's Statute. The offered testimony was inadmissible for other reasons herein stated.

█ It was the purpose of counsel for Florence by parol evidence to vary and wipe out essential terms of a written contract. The contracting parties were aware of the various considerations granted and received. Among other things which Anna received from Newby, Jr., are the following: (1) a settlement of all disputes and differences existing between the heirs of Newby, Sr.; (2) an assignment by Newby, Jr., of all of his inter-

est in the estate of his father; (3) an agreement that Newby, Jr., treat Anna at all times with respect; (4) an agreement not to request any loans or advancements from Anna, and (5) an agreement that all advancements made by Newby, Sr., be considered as gifts and that " * * * no one of the parties hereto shall have any claim against any other by reason of such gifts or advancements."

Counsel for Florence, in support of his contention that parol evidence on the question of consideration should have been admitted, cites as authority cases and quotations from 32 C.J.S. Material therein deals with *recitals* in an agreement and is authority for the proposition that recitals are not conclusive and may be explained by parol. That is not the case here. Florence did not seek to explain recitals, but rather sought by parol evidence to do away with the written agreement of the parties.

A complete answer to these contentions of Florence is found in *Tabernacle v. Orvis,* 113 Colo. 408, 157 P.2d 619, wherein it is said:

"As to consideration it should be noted that if defendant's theory is submitted for evidence and thereupon sustained, no vestige of this contract will remain. It is not here a question of varying terms, but the total nullification and annihilation of a written evidence of indebtedness admittedly executed and delivered and wholly free of any suggestion of fraud, deception, coercion, or mistake. It is difficult to find in the books such an attempt to totally eradicate by parol an unquestioned writing. Moreover, this is not a simple agreement to pay money based upon a mere formal statement of consideration. The agreement is explicit and the consideration expressed and definite. It is to repay 'a loan of the hereinafter mentioned sum.' Such expression of consideration is contractual, of the very essence of the contract, and falls within no exception permitting variation by parol. 32 C.J.S., p. 889, § 958; *Randolph v.*

*Helps,* 9 Colo. 29, 10 Pac. 245; *Collins v. Shaffer,* 66 Colo. 84, 179 Pac. 152."

In *Collins v. Shaffer,* 66 Colo. 84, 179 Pac. 152, this court said:

" * * * The contract recites, as shown in Exhibit C, that the notes are 'payment in full for' a one-fourth interest in a certain patent issued by the government of the Dominion of Canada. The consideration for the notes is thus particularly set out. The consideration sought to be proved by the defendant by his parol evidence was wholly different from that described in Exhibit C. Such evidence does not come within any of the exceptions to the rule that parol evidence is inadmissible to vary the terms of a written instrument, and the court committed no error in disregarding the same, and in directing a verdict for plaintiff. 17 Cyc. 659; 10 R.C.L. 1044, sec. 238; *Langan v. Langan,* 89 Cal. 186, 26 Pac. 764; *Hubbard v. Marshall,* 50 Wis. 327, 6 N. W. 497."

The parties here are in complete disagreement as to whether execution of the agreement served to divest Anna of any title that she had and to vest the portion so divested in the children and stepchildren. The agreement was one dealing with and affecting real property. It was not merely a personal agreement. In the agreement it is provided that:

" * * * It is definitely understood that neither this agreement nor any copy thereof nor any reference thereto shall be placed upon the records of Boulder County, Colorado [the county in which the real property is situate]."

Thus it appears that the parties considered the agreement as affecting title to real property and they decided to withhold the agreement from recording in the county where the property is located.

We conclude that the agreement did serve to divest Anna of the fee simple title and to vest in the children and stepchildren an interest in the property.

In the agreement it is provided that the children and grandchildren ratify the conveyance from Newby, Sr., to Anna. It is further provided that they:

' * * * transfer and assign fully and completely all of their right, title and interest in the said described property, *subject to the covenants and agreements herein contained.*" (Emphasis supplied.)

Among other covenants are (1) a covenant not to mortgage; (2) a covenant not to sell. These covenants limited Anna's ownership and title.

Had Anna died without making a Will, surely title to the property would vest in the children as contemplated by the contract. The trial court stated:

"That the requirement in said agreement that a Will be made by Anna F. Newby, was only the vehicle chosen as a means of making record title to said property in the second and third parties to said agreement, on the death of Anna F. Newby, while preserving to Anna F. Newby during her lifetime the apparent ownership of the property described in said agreement; * * *."

We are referred to and find no decisions of this court which deal with the exact problem at hand. Other jurisdictions have resolved similar problems.

In the case of *In Re Estate of Johnson*, 389 Ill. 425, 59 N. E. (2d) 825, a husband and wife entered into a post-nuptial agreement. The husband paid to his wife $10,000 and she in turn agreed to make a Will and bequeath one-sixth of her estate to her husband's four children by a previous marriage. The wife made a Will, but, before making it, one child had died, so in her Will she gave to each of the three surviving children a one-twenty-fourth of her estate (a one-eighth instead of a one-sixth of her estate). In her Will she made mention of her contractual obligation and no doubt felt that her Will discharged that obligation. The court held to the contrary, and in the opinion is the following language:

"That a contract to devise or bequeath property, if

172

fairly entered into and based upon a valid and adequate consideration, will be enforced, is well established. (*Barrett v. Geisinger,* 179 Ill. 240.) Where the contract is to devise specific and designated property, like a piece of real estate, the equitable title vests in the beneficiaries, under the contract. Thereafter the testator holds the legal title in trust for their benefit. Such contracts may be specifically enforced. (*People v. Tombaugh,* 303 Ill. 591.)

\* \* \*

" \* \* \* The will neither increased, diminished, enlarged nor changed the rights under the contract. If no will had been made, those rights would have been exactly the same.

\* \* \*

"The right of the beneficiaries here to receive one sixth of the net estate did not arise nor pass to them under the will. The will was merely the fulfillment or means of carrying out the terms of the contract. The beneficiaries had a legal, enforceable claim against the estate for an amount equal to a one-sixth part thereof. The will was only confirmatory of the contract. It gave them nothing different. They were, to that extent, creditors of the estate. The will was only the means adopted for carrying out the transaction. It neither created nor changed the rights of the beneficiaries."

In *Harris v. Harris,* 130 W. Va. 100, 43 S. E. (2d) 225, the husband obtained a divorce and the parties made an agreement in writing as to support of the wife and children. Among other provisions of the agreement is the following:

"In the event of the death of the party of the first part [the husband], all of his property, after the payment of any debts he may owe, shall be divided equally between the party of the second part [the wife], and their two children."

The husband remarried and died owning real property.

The second wife claimed an interest in the property. This claim was denied and the court said:

"Under the contract, the right to have the property held by Gust D. Harris at the time of his death belonged to his former wife, Grace Harris, and their two children. After it [the contract] was made he held the legal title to the real estate in trust for their benefit until his death. * * * By the contract, and at the time it was entered into, he effectively disposed of the equitable title to the land, and at no time during his marriage to the plaintiff was he seised or possessed of an estate of inheritance in the real estate * * *.

\* \* \*

"The contract between Gust D. Harris and Grace Harris is analogous, with respect to the immediate transfer of the equitable title to the property, to a contract for the sale of land. Its effect was to pass, at the time it was entered into on March 28, 1941, the equitable title in the real estate of Gust D. Harris from him to his former wife, Grace Harris, and the two children * * *."

As to assigned error No. 4, the record shows that the court admitted in evidence four letters exchanged by the attorneys representing the interested parties who later signed the agreement. These letters indicate the reasons for entering into the agreement. Also admitted in evidence over objections of Florence were three unsigned drafts of contracts prepared by attorneys representing some or all of the parties to the agreement. The drafts were designed to settle the rights and duties of the parties. As drawn they were unacceptable; they were modified and rewritten, and finally took on the form of the contract which is the basis of this action. Also admitted in evidence were the findings and judgments of the county court and the district court in the case of *In Re Estate of Newby*, supra.

We conclude that it was proper and not error to admit these documents in evidence. They furnish background

for the contract, and serve to show the intention of the parties.

As to the assigned error No. 5, counsel's contention that the Will conforms to the contract is without merit. No doubt all of the parties to the contract and their attorneys were of the opinion that the Will discharged the duty imposed by. the contract. In this they were mistaken — their mistake was one of law and not fact.

We are in accord with the findings and conclusions of the trial court to the effect that the children and stepchildren at the time the contract was signed and by virtue thereof acquired a vested interest in the property. Newby, Jr., and May Romigh, prior to their deaths, had each acquired a vested interest in the real property. On their deaths their interests passed to their heirs or named beneficiaries. The trial judge so held and directed disposition of the property according to such determination and in conformity with the terms of the agreement as he, and we, interpret the same.

The judgment is affirmed.