No. 21798.

THE CITY OF LITTLETON, A MUNICIPAL CORPORATION *v.* THE EMPLOYERS FIRE INSURANCE COMPANY AND LATIMER AND GAUNT CONTRACTORS, INC., A COLORADO CORPORATION.
(453 P.2d 810)

Decided May 5, 1969.

ALAN L. STERNBERG, RAYMOND C. JOHNSON, for plaintiff in error.

MCCOMB, ZARLENGO and MOTT, JOHN C. MOTT, for defendant in error The Employers Fire Insurance Company.

H. D. REED, for defendant in error Latimer and Gaunt Contractors, Inc.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

THE City of Littleton (hereinafter referred to as Littleton) brought an action against Latimer and Gaunt Contractors, Inc. (hereinafter referred to as the contractor) to recover damages resulting from the alleged breach of a contract to build two five-million gallon water tanks. From an adverse judgment, Littleton brings this writ of error. The contractor's bonding company, The Employers Fire Insurance Company, also appears as a defendant in error. Where necessary, the partners in the contracting firm, Latimer and Gaunt, will be referred to individually.

In brief, on May 8, 1961, Littleton and the contractor entered into a contract which required the contractor to build two pre-cast and pre-stressed concrete water tanks pursuant to plans and specifications supplied by Littleton. The plans for each tank called for a poured concrete base, with a diameter of 175 feet. Around the edge, 92 pre-cast concrete wall panels, each six feet wide and 29 feet high, were to be set in a slot in the base and jointed together. Once in place, the wall panels were to be pre-stressed by wrapping wire cable under tension around the circumference of the tank. During the course of construction, both tanks collapsed.

Thereafter, Littleton and the contractor entered into a Supplemental Agreement which, among other things, required reconstruction of the tanks pursuant to specifications and plans already in existence, and in accordance with instructions to be supplied by Littleton's consulting engineer. No work was done pursuant to the Supplemental Agreement. In an exchange of letters after its execution, the contractor requested but was refused additional written details regarding reconstruction. On April 15, 1962, the contractor terminated the agreement by telegram, and the next day sent a letter to the councilmen of Littleton explaining that the agreement was terminated because the design was faulty.

Littleton brought the present suit, alleging that the contractor had breached its obligations under the Sup-

plemental Agreement. After a trial to the court, the court found that performance under the terms of the Supplemental Agreement was impossible as a practical matter. Citing the *Restatement of the Law of Contracts* § 454 [hereinafter cited as *Restatement*], the trial court ruled as a matter of law that the impossibility constituted a complete defense to the claims of the plaintiff. Littleton contends here that the contractor either knew or should have known of the facts which now support its defense of impossibility when it signed the Supplemental Agreement, and that the parties by that agreement allegedly manifested an intention that impossibility should not be a defense, and that, therefore, the defense of impossibility of performance is inapplicable.

I.

The law recognizes impossibility of performance as a defense to an action for breach of contract. In his brief, the contractor suggests that we adopt the *Restatement* § 454 definition of impossibility. According to the *Restatement,* impossibility means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved. As elaborated in the comment, "impossible" must be given a practical rather than a scientifically exact meaning. Impracticability rather than absolute impossibility is enough. *Restatement* § 454, and *comment a.* thereunder.

Commenting on the *Restatement* § 454, Williston has stated that:

"[t]he true distinction is not between difficulty and impossibility. A man may contract to do what is impossible . . . The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promisor." 6 *Williston, Contracts* § 1931 (Rev. ed.) See 6 *Corbin, Contracts* § 1325.

Other jurisdictions have begun to adopt the *Restatement*

definition. See 84 A.L.R.2d 12, and cases therein cited. After reviewing the authorities which have subscribed to the *Restatement* definition of impossibility, we hereby adopt the definition of impossibility contained in the *Restatement* § 454 as interpreted by *Williston*. See commentary on this section contained in *Storke, Colorado Annotations to Restatement of the Law of Contracts.*

## II.

The principal question remaining in this case is whether we must conclude as a matter of law that the evidence is insufficient to support the finding of the trial court that, within the framework of the *Restatement* definition of impossibility, the tanks contemplated by the Supplemental Agreement were impossible to build. If there is substantial evidence to support the findings of the trial court, then the judgment must be affirmed.

The trial judge in this case heard fifteen days of testimony in a trial which commenced on December 14, 1964, and terminated on January 14, 1965. Over 4,000 folios of testimony and three boxes of documentary exhibits appear in the record. The record reflects that the trial judge observed at least one demonstration in the courtroom. Throughout most of the trial, he listened to the expert testimony of consulting engineers. Thirty days after the trial ended, the court entered carefully considered and detailed findings of fact, conclusions of law and judgment. Under these circumstances, it is particularly appropriate to reiterate the general rule that the judgment of the trial court is presumed to be correct, and that the findings of the trial court are conclusive if supported by the evidence. *E.g., Julius Hyman & Co. v. Velsicol Corp.*, 123 Colo. 563, 233 P.2d 977.

Nine engineers and contractors testified on the issue of impossibility of performance. One engineer said that construction of the tanks either as originally specified by the contract or as modified by the Supplemental Agreement was not possible either as a structure or later for use as a water-containing tank. Another testified that he

"certainly wouldn't attempt" to rebuild the tanks on the basis of the information supplied on the documents. Another contractor told Latimer that he didn't think it was possible to construct the walls of the tanks in the manner specified. Even Jorgensen, the consulting engineer for Littleton, admitted that he was "scared of these tanks," according to the testimony of Latimer. On cross-examination, Jorgensen admitted that the specifications on one tank would have had to be changed to facilitate reconstruction. Although one engineer was apparently convinced that construction was physically possible, he appeared to be equally convinced that the tanks would collapse soon after construction.

Without detailing the other testimony, suffice it to say that the consensus was that the tanks could not be reconstructed as contemplated under the Supplemental Agreement consistent with sound engineering practice. We conclude that there was substantial evidence in the record to support the trial court's finding that the tanks contemplated by the Supplemental Agreement were impossible to build, either physically, as structures, or functionally, as water-containing tanks, within the *Restatement* definition of impossibility of performance. See *Restatement* § 456, *Illust.* 4. Cf. *Smith Engineering Co. v. Rice*, 102 F.2d 492, *cert. denied*, 307 U.S. 637, 59 S.Ct. 1034, 83 L.Ed. 1519.

### III.

According to Littleton's argument, when the contractor entered into the Supplemental Agreement, it knew or had reason to know of the facts which later furnished the basis for the trial court's finding of impossibility of performance. If the evidence supports this assertion, then impossibility of performance would be no defense to Littleton's claim. See *Restatement* § 456, *comment c; Restatement* § 457.

The Supplemental Agreement, which had been submitted to the contractor by Littleton, was signed by the contractor on November 11, 1961, and by Littleton on

December 5, 1961. Since Littleton's argument bears directly on the knowledge which the contractor had when it executed the agreement, we will treat November 11, 1961, as the significant date.

██ Apart from expressly providing that construction should proceed in accordance with instructions from Jorgensen, the agreement outlined the scope of the work, "subject to modifications as the work progresses." On direct examination, Latimer testified that when the agreement was signed, he "had a great deal of faith" in what Jorgensen had to say about reconstructing the tanks. The record clearly supports the observation that after the collapse of the tanks both parties to the contract knew that some modifications of the original specifications would become necessary. But the evidence above also supports the further inference that on November 11, 1961, both parties to the contract expected that construction could proceed. We cannot, therefore, say that as a matter of law the trial court was required to find that the contractor undertook what it knew was impossible to accomplish when it signed the Supplemental Agreement.

Among other reasons which the trial court assigned for its finding of impossibility was a specific finding that performance was impossible due to the insufficient and defective plans, specifications and directions for reconstruction. It is appropriate to note at this point, as one of the briefs put it, that even the engineers had their consulting engineers. Extensive testing was begun to discover the cause of collapse.

The record is replete with evidence to support the proposition that conclusions as to the cause of the collapse were not reached until well after the Supplemental Agreement was signed. For example, Latimer testified that after signing the agreement he talked to other engineers and then came to the conclusion that the tanks could not be built according to any plans which had been furnished to that date.

Jorgensen, the consulting engineer for Littleton, theorized that the basic cause for the collapse was an absence of grout in the joints and misalignment of the panels. But he testified that he had not reached a conclusion as to the cause of collapse until March of 1962, over a year after the Supplemental Agreement was signed.

Twice in April of 1962, as the trial court found, the contractor requested additional instructions, and was told that the instructions already given were sufficient. Only after Littleton once more demanded that reconstruction begin, without supplying additional instructions, did the contractor terminate the agreement.

In passing, we note that after Latimer and Gaunt terminated their agreement, Littleton redesigned the joint between the panels, made some additional modifications of the original specifications and re-let the project for public bid. But not a single bid was received on the precast method of reconstruction. Eventually steel tanks were erected on the concrete slabs originally poured to provide the bases for the concrete tanks.

IV.

We turn now to the suggestion of Littleton that the parties to the agreement expressed an intention that impossibility of performance should not be a defense to an action for breach of contract. The Supplemental Agreement provides that the contractor "is not responsible for the engineering or design of the said tanks," and that the parties to the contract desired "to avoid a resort to litigation" to determine the responsibility for the collapse of the tanks. According to Littleton, the foregoing contract terms manifest the intention of the parties that impossibility of performance should not be a defense to an action for breach of contract. Thus Littleton argues that the contractor should have tried to erect two water tanks which, according to the testimony of the expert witnesses, either could not be erected or could not stand once erected. Having failed to try, Littleton contends,

the contractor cannot claim that his obligation was discharged by impossibility.

As Littleton argues, the defense of impossibility is inapplicable where a contrary intention has been manifested. *Restatement* §§ 456, 457. The exception to the defense of impossibility is applicable where, on an interpretation of the contract in the light of accompanying circumstances and usages, the risk of impossibility due to presently unknown facts is clearly assumed by the promisor. In view of the contractor's express disclaimer of responsibility for defects in the design in the Supplemental Agreement, there can be no serious contention here that the promisor, *i.e.*, the contractor, intended to assume the risk. See *Restatement* § 456, *Illustration* 4. Nor does the recital that the parties desired to avoid litigation raise an inference that the contractor assumed the risk of impossibility.

There is no merit in Littleton's argument that defective specifications cannot provide the basis for the contractor's claim that performance was impossible. When the Supplemental Agreement was executed, both parties contemplated the necessity for additional instructions from Jorgensen. In this case, Littleton's insistence that the instructions were adequate, and its corresponding refusal to issue the additional instructions requested by the contractor, later provided the basis for the defense of impossibility of performance. With additional instructions, performance may have been possible. Without additional instructions, as the engineers testified, performance was impossible.

V.

We have not overlooked Littleton's argument that the Supplemental Agreement was a compromise agreement and that therefore the contractor was precluded from setting up defenses which might have been available to him if Littleton had initiated suit immediately after the tanks collapsed, instead of entering into the Supplemental Agreement. See *Holy Cross Gold Mining*

& *Milling Co. v. Goodwin*, 74 Colo. 532, 223 P. 58. We are not dealing here with defenses possibly available to an earlier agreement which have been compromised by a subsequent agreement. Instead, we are concerned with a new contract whose terms require reconstruction of the tanks pursuant to instructions from Jorgensen. The circumstances of the execution of the Supplemental Agreement do not suggest that the contractor intended to relinquish his right to raise the defense of impossibility to an action brought against him for an alleged breach of the Supplemental Agreement. Further, the Supplemental Agreement required that the instructions from Jorgensen be in accord with good contracting and engineering practices. As the expert witnesses testified, however, it was impossible, within the meaning of the word as we have defined it, for the contractor to reconstruct the tanks in accordance with the instructions furnished him. Thus impossibility of performance was a valid defense in the present action.

The judgment is affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.