MURRAY EQUIPMENT COMPANY, a Colorado corporation, Plaintiff-Appellee,

v.

CURTIS, INC., a registered foreign corporation, Oneida Cold Storage Division, Defendant-Appellant.

No. 84CA0673.

Colorado Court of Appeals, Div. II.

April 3, 1986.

Rehearing Denied May 1, 1986.

Certiorari Denied Sept. 8, 1986.

Sherman & Howard, W. David Pantle, Denver, for plaintiff-appellee.

Roger T. Castle, P.C., Roger T. Castle, Denver, for defendant-appellant.

STERNBERG, Judge.

Curtis, Inc., defendant in this breach of contract action, appeals from a judgment entered on a jury verdict in favor of plaintiff, Murray Equipment Company. We affirm.

Murray is in the business of designing and supplying materials handling systems used in warehousing operations. It does not manufacture system components, but orders them from independent suppliers. In late 1981, Curtis accepted separate quotations from Murray regarding the following equipment: five Crown pallet trucks; three Raymond pallet trucks with batteries and chargers; three Raymond forklifts with batteries and chargers; two White forklifts with batteries and chargers; and a steel storage-rack system made by Frazier Industrial Company. Each quotation form states that: "The Terms & Conditions on Murray Form TC 1000 form a part of this quotation." Murray Form TC 1000 provides, in pertinent part, that:

> "If shipment is delayed at the request of Buyer, payment shall be made by Buyer as though shipment had been made as specified *and for any expenses incurred by Seller due to buyer's request in delaying shipment....*
>
> .    .    .    .    .
>
> "Terms of payment are net cash ten (10) days after date of Seller's invoice.... If the cost to Seller of material, labor or equipment increase, the price to Buyer shall be adjusted accordingly." (emphasis supplied)

Murray's standard invoice form stated that past due accounts would be assessed a one-and-one-half percent per month, or eighteen percent annual, service charge.

All of this equipment was to be delivered for installation and use in a cold-storage warehouse to be constructed by Curtis. It was contemplated that construction and delivery of the equipment were to be completed by April 1982. Because of extreme weather conditions, however, Curtis encountered construction delays and requested Murray to delay shipment of the equipment. Murray accommodated Curtis by notifying its suppliers of the delay. All of the equipment was readily available except the racking system which was to be fabricated by Frazier Industrial. Frazier had

completed part of the racking, but accommodated Murray by rescheduling work on uncompleted portions. The pallet trucks and forklifts were accepted by Curtis, which requested Murray to store them in Murray's warehouses until the Curtis warehouse was ready. Murray complied and billed Curtis for this equipment in May 1982.

Curtis then began to encounter difficulties in arranging loans to finance purchase of the equipment ordered from Murray. In June 1982, Murray became concerned about receiving payment as it had been billed by its suppliers for the trucks and forklifts and was incurring interest charges on unpaid balances. It was also receiving pressure for payment from Frazier, which had not been paid for completed portions of the racking and which had incurred costs connected with the delay requested of Murray by Curtis. Murray therefore initiated discussions with Curtis. Curtis indicated that it could not pay at that time, but that it expected its financing to be arranged soon.

In late June, when Frazier could no longer carry its costs, it billed Murray for approximately seventy-five percent of the total price of the racking. At this time about forty-five percent of the racking had been completely fabricated and was ready for shipment. Other amounts billed reflected costs incurred for raw materials and partial fabrication of remaining portions of the racking. When Murray received this bill, it passed the costs on to Curtis by invoice dated June 28, 1982.

During July and August, Curtis continued to have trouble with its financing and, despite further negotiation and demands by Murray, refused to pay its account. This action was filed on August 31, 1982. The parties attempted to work out their differences, but no settlement was reached. After trial to a jury, Murray was awarded damages for breach of contract of $135,-815.02, including interest under the contract of $47,435.20.

I.

Curtis first contends that the trial court erred in refusing to direct a verdict against Murray. It argues that the transaction at issue here was a package deal for the purchase of the complete material handling system. Because there was no dispute that Murray was not able to tender delivery of all of the racking as of the date Curtis was billed for it, Curtis contends that it had no payment obligation under the Uniform Commercial Code. Therefore, it concludes that it had not breached the parties' agreement by its failure to complete payment for the system components it had ordered. We disagree.

█ *"Unless otherwise agreed* all goods called for by a contract for sale must be tendered in a single delivery, and payment is due only on such tender...." Section 4–2–307, C.R.S. (emphasis supplied). An unambiguous agreement must be enforced according to its express terms. *See Buckley Bros. Motors, Inc. v. Gran Prix Imports, Inc.,* 633 P.2d 1081 (Colo.1981).

█ Here, it is not argued that the language of Murray's Form TC 1000 is ambiguous. Because each quotation document addresses a separate component of the warehousing system and because each incorporated Form TC 1000 by explicit reference, the quotation documents, as each was supplemented by the language of the form, constituted separate but related contracts of sale.

Further, the plain language of Form TC 1000 bound Curtis to pay, within ten days of invoice, *any* reasonable expenses incurred by Murray as a result of delays in shipment requested by Curtis, and that Frazier's costs, passed on to Curtis in the June 28 invoice, constituted such expenses. Thus, the contract for racking obligated Curtis to pay the full amount of the invoice in spite of the fact that Murray had tendered only forty-five percent of the racking.

II.

█ In a related argument, Curtis contends that the trial court erred in upholding the jury award to Murray of $29,963.63,

billed by Frazier to Murray as cancellation charges and carrying costs. Curtis argues such award is not sustainable because Murray failed to provide any evidence that this charge was a "commercially reasonable" incidental expense within the meaning of § 4–2–710, C.R.S. Again, we disagree.

The jury could have concluded that Frazier's charge to Murray for carrying and cancellation costs was a reasonable one arising under the express terms of the racking contract as an expense incurred as a result of Curtis' request to delay shipment. Because this characterization of this element of the damage award is supported both by our interpretation of the parties' agreement and by evidence in the record, the award will not be disturbed here. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979); *Burks v. Verschuur*, 35 Colo.App. 121, 532 P.2d 757 (1972). Under this analysis, we do not reach Curtis' argument that Murray must prove this element of the award "commercially reasonable" to qualify it as incidental damages under § 4–2–710, C.R.S.

### III.

Curtis further contends that the trial court erred in awarding to Murray $47,435.20 in interest, calculated at eighteen percent per annum, on unpaid invoices. It argues that the parties did not agree on an eighteen percent figure and that, absent such agreement, interest must be awarded at the statutory rate. Murray responds that the award is justified because the evidence showed that the prior course of dealing between the parties established an obligation to pay such interest under the contracts at issue here and because the jury's verdict supports the conclusion that it so found. We agree with Murray.

"A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Section 4–1–205(1), C.R.S. A course of dealing between parties of which they are or should be aware may supplement the terms of an agreement. Section 4–1–205(3), C.R.S.

The evidence before the jury included more than fifty invoices submitted by Murray to Curtis in years prior to the date of the present controversy. Each invoice contained the statement, mentioned above, that unpaid invoices would be charged an eighteen percent annual interest rate. While there was evidence that Murray had never before charged Curtis for such interest, there was no evidence that Curtis had ever in fact owed money to Murray on a past-due account.

The jury was properly instructed on the course of dealing issue. In these circumstances, we conclude that the jury could properly have concluded that Curtis knew from past experience that Murray charges eighteen percent annually on unpaid invoices and that this term was included in the parties' agreement. *Cf. Surplus Electronics Corp. v. Gallin*, 653 P.2d 752 (Colo. App.1982). Thus, the trial court did not err in awarding the $47,435.20 as contract interest.

The other contentions raised by Curtis are without merit.

Accordingly, the judgment is affirmed.

SMITH and BABCOCK, JJ., concur.