**MAGNETIC COPY SERVICES, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**SEISMIC SPECIALISTS, INC., a Colorado corporation, Defendant–Appellee.**

**No. 88CA1788.**

Colorado Court of Appeals, Div. V.

Oct. 11, 1990.

Rehearing Denied Jan. 24, 1991.

Grant, McHendrie, Haines and Crouse, P.C., Donald B. Gentry, Denver, for plaintiff-appellant.

Tobey & Pelz, P.C., Charles E. Stuart, Harlan P. Pelz, Denver, for defendant-appellee.

Opinion by Judge DUBOFSKY.

Plaintiff, Magnetic Copy Services, Inc. (MCS), appeals dismissal of its complaint for breach of contract against defendant, Seismic Specialists, Inc. (SSI), and the trial court's judgment for SSI on its counterclaim. We reverse.

MCS is a Colorado corporation that engages in the business of copying magnetic tapes. SSI is a Colorado corporation that conducts seismic surveys in areas of potential oil and gas exploration. SSI collects seismic data by generating sound waves through a dynamite blast or other vibration equipment. Sound waves are then recorded on magnetic tapes which are duplicated by companies such as MCS for sale to SSI customers.

In 1986, MCS and SSI were both new companies. Jeff West, a principal of MCS, and Paul Schillmoller, a principal of SSI, had both previously been involved in the oil and gas exploration industry and had known each other and worked together since approximately 1983.

On October 22, 1986, MCS and SSI signed a contract, prepared by MCS, which

dealt with MCS' copying of SSI's field tapes. The contract stated:

"*SSI agrees to provide MCS 3,000 field tapes to be copied for its clients within one year of this agreement.* Any changes in this agreement must be submitted in written form to MCS and meet with their approval 30 days in advance.

"MCS agrees to copy the above mentioned field tapes and all support documents at $40.00 per tape. MCS will handle all billing of clients and shipping of merchandise. MCS will pay SSI a commission of $10.00 per tape upon being invoiced and receipt of payment from client. Any changes in this agreement must be submitted in writing to SSI and meet with their approval 30 days in advance." (emphasis added)

Within a year after the contract was executed, SSI had provided only 1,399 tapes to MCS for copying. Nevertheless, in the fall of 1987, SSI continued to provide tapes to MCS for copying.

MCS claims that SSI's failure to produce 3,000 tapes within one year of the contract constituted a breach of the contract and that SSI was, therefore, not entitled to its commission on certain tapes, including the last 43 tapes which were provided before October 22, 1987, the anniversary date of the signing of the contract. Furthermore, MCS argues it need not pay a commission to SSI for the 538 tapes copied during the months of November and December of 1987.

The evidence indicated that, in 1986, after some preliminary discussions, SSI reviewed its situation and determined it could provide 3,000 tapes during the next year. It was on the basis of this representation that the number 3,000 was placed in the written contract by MCS.

During this one-year period several events pertinent to the parties' agreement occurred. SSI lost one or two of its primary customers. This loss reduced the number of tapes SSI could produce to provide for copying to MCS. Also, during this one-year period SSI had several hundred tapes copied by companies other than MCS because its customers either wanted a shorter turnaround time on the copying than MCS provided or they wanted another copying method used. Moreover, during this one-year contract period, MCS had cash flow difficulties, and at times it delayed making payments to SSI after it (MCS) had received payment from customers. SSI allowed MCS significant flexibility in making its payments.

SSI employees testified that the reference in the contract to 3,000 tapes was a goal and not a guarantee. The employees, however, also testified that SSI always intended to provide 3,000 tapes, but it was not able to do so within the year. MCS employees testified that they considered that SSI had promised or committed to provide 3,000 tapes within one year.

I.

MCS argues that the terms of the contract are clear and unambiguous and that, therefore, it was improper for the trial court to vary its terms by the use of parol evidence. We agree.

The trial court recognized that the critical part of the contract is the provision specifying that 3,000 tapes would be provided by SSI to MCS. The trial court findings do not state whether this provision is ambiguous. However, since the trial court used defendant's witnesses' testimony to ascertain the intent of the parties, it must have determined the contract was ambiguous.

In the absence of an ambiguity, a written contract cannot be varied by extrinsic evidence. *Union Rural Electric Ass'n v. Public Utilities Commission*, 661 P.2d 247 (Colo.1983). And, an unambiguous agreement must be enforced according to its express terms. *Murray Equipment Co. v. Curtis, Inc.*, 725 P.2d 35 (Colo.App. 1986).

The determination of whether a contract is ambiguous is a question of law for the court. *Mashburn v. Wilson*, 701 P.2d 67 (Colo.App.1984). And, since the issue is one solely of law, an appellate court will not be bound by the trial court's

conclusion. *Radke v. Union Pacific R.R. Co.*, 138 Colo. 189, 334 P.2d 1077 (1959).

■ A mere disagreement between the parties regarding the proper interpretation of a contract does not, in itself, create an ambiguity. *Union Rural Electric Ass'n v. Public Utilities Commission, supra.*

■ Here, SSI argues the contract is ambiguous because the term "guarantee" was not included, and the testimony that SSI's promise to provide 3,000 tapes was merely a goal is admissible to confirm the ambiguity and to explain the intent of the parties. We disagree and construe the phrase "agrees to provide" as constituting an unambiguous promise by SSI to provide MCS with 3,000 tapes within a year of the contract.

The contract does not state that SSI's performance was conditioned upon any set of circumstances. Furthermore, the contract does not state or imply that providing 3,000 tapes within a year is merely a goal or objective. Hence, we will not read the contract as so stating. *See Griffin v. United Bank of Denver*, 198 Colo. 239, 599 P.2d 866 (1979).

■ The trial court used testimony from SSI regarding the 3,000 tape "goal," admitted without objection, as a basis for modifying the contract. SSI implicitly argues that because there was no objection to this parol evidence, we should uphold the trial court's determination. We disagree.

■ The parol evidence rule is one of substantive law, not merely one of evidence. Therefore, if, as here, a contract is unambiguous, then parol evidence, even if received without objection, must be ignored by the trial court. *Commerce Trust Co. v. Watts*, 360 Mo. 971, 231 S.W.2d 817 (1950); *Fogelson v. Rackfay Construction Co.*, 300 N.Y. 334, 90 N.E.2d 881 (1950); *National Surety Corp. v. University of Missouri*, 268 F.2d 525 (8th Cir.1959); *O'Brien v. O'Brien*, 362 Pa. 66, 66 A.2d 309 (1949); J. Calamari & J. Perillo, *Law of Contracts* § 3–2(d) at 140 (3d ed.1987); 3 A. Corbin, *Corbin on Contracts* § 573 (1960). Thus, it has been held that the parol evidence rule can be raised on appeal despite the absence of an objection. *Dollar v. International Banking Corp.*, 13 Cal.App. 331, 109 P. 499 (1910); J. Calamari & J. Perillo, *Law of Contracts*, § 3–2(d) at 140 (3d ed. 1987).

The rule is well stated in 4 S. Williston, *Contracts* § 631 (W. Jaeger 3rd ed. 1961):

"The courts 'have taken the view that, as the rule that parol testimony with respect to prior or contemporaneous agreements is not admissible to vary, contradict, or add to the terms of a written instrument is one of substantive law, and not a mere rule of evidence, testimony introduced in violation of the rule, even in the absence of objection thereto, can be given no legal effect.' "

■ Although parol evidence may be considered by the trial court to determine if a contract is ambiguous, if, as here, after hearing the evidence the contract remains unambiguous the parol evidence should be stricken. *See Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984).

*Dare v. Sobule*, 674 P.2d 960 (Colo.1984) is consistent with this principle. There, testimony was admitted without objection that a motorcyclist had not worn a protective helmet. Since the failure to wear a helmet could not be considered as negligence, the court held an instruction so informing the jury should have been given. The court stated:

"As a matter of substantive law, it makes no difference that the evidence of failure to wear a protective helmet was not challenged by objection or a motion to strike at trial. *Huddleston v. Fergeson*, 564 S.W.2d 448 (Tex.Civ.App.1978) (testimony violative of parol evidence rule, a rule of substantive law, is without probative force whether objected to or not)."

Therefore, we conclude the trial court erred in using parol evidence to vary the terms of an unambiguous contract, and its interpretation of the contract premised thereon cannot stand.

## II.

MCS next argues that the trial court erred in its alternative ruling when it determined that, even if the 3,000 tapes were a "guaranteed figure" to be provided within a year of the contract, SSI had demonstrated the affirmative defense of impossibility. We agree that the impossibility defense was, as a matter of law, not proven here.

The trial court determined that defendant believed it could meet the 3,000 tape goal and that, therefore, the reduction in the number of available tapes was not foreseeable. The testimony indicated that there is often uncertainty in the oil and gas field as to whether particular customers will continue to order seismic tapes.

Here, SSI did not have an existing contract with its customers for tapes during the contract year. The evidence indicated that the consideration provided to SSI for agreeing to provide the 3,000 tapes within a year was the $10 rebate for each tape it provided.

■ Impossibility of performance is determined by whether " 'an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract....' " *Littleton v. Employers Fire Insurance Co.*, 169 Colo. 104, 453 P.2d 810 (1969), *quoting* 6 Williston, *Contracts* § 1931 (rev. ed); *Town of Fraser v. Davis*, 644 P.2d 100 (Colo.App.1982); *see* Restatement (Second) of Contracts § 266(2). Changes in economic conditions cannot provide a basis for rescission of a contract, nor can the fact that the value of the bargain has decreased be an excuse for nonperformance. *Ruff v. Yuma County Transportation Co.*, 690 P.2d 1296 (Colo. App.1984).

If the occurrence is reasonably foreseeable, the courts typically take the position that the promissor has assumed the risk of impossibility or frustration. *See* J. Calamari & J. Perillo, *Law of Contracts* § 13–18 at 569 (3d ed. 1987); *Glidden Co. v. Hellenic Lines, Ltd.*, 275 F.2d 253 (2d Cir.1960).

Generally, the failure of a promissor to supply items is not considered "impossible" if the promissor does not have a contract with its supplier. *See* J. Calamari & J. Perillo, *Law of Contracts* § 198 (1970). Furthermore, if, as here, the particular source of the items is not identified in the agreement, then the doctrine of impossibility is inapplicable. *See* § 4–2–615, C.R.S. (Official Comment 5).

■ In addition to the general rule that a change in economic circumstances does not excuse performance of a contract, here, the following combined factors also make the defense of impossibility inapplicable: (1) The absence of a contract between SSI and its customers as to tapes; (2) the known uncertainties of obtaining or keeping customers for seismic tapes; and (3) the failure to define in the contract the specific source of the tapes.

We thus conclude that the loss of certain customers (which caused SSI not to supply MCS with agreed number of tapes) is not sufficient to establish the defense of impossibility.

There are several defenses raised by SSI that were not ruled on by the trial court. Therefore, the judgment is reversed, and the cause is remanded with directions that the trial court rule on those defenses and determine the appropriate damages, if any. Furthermore, since the trial court's decision in regard to SSI's counterclaim was based in part on its determination about the meaning of the contract and the impossibility of performance, that portion of the judgment is also reversed.

Judge DAVIDSON, concurs.

Judge RULAND, dissents.

Judge RULAND dissenting.

I respectfully dissent.

In my view the majority opinion adopts a rule for this jurisdiction which I am unable to reconcile with prior appellate decisions relating specifically to admission of parol evidence.

Parol evidence of written or oral negotiations prior to execution of a written con-

tract is admissible for a limited purpose such as, for example, to establish the reason for entering into the written agreement. *See Tarr v. Hicks*, 155 Colo. 159, 393 P.2d 557 (1964). However, if, as here, no objection is made to the admission of this evidence, I believe it must be considered by the trial court for all purposes.

With reference to the obligation of counsel to object to evidence which is admissible for a limited purpose, our supreme court stated in *Polster v. Griff's of America, Inc.*, 184 Colo. 418, 520 P.2d 745 (1974):

"It is a fundamental rule of trial practice, long established in Colorado, that when evidence is admissible for one purpose and not another, the burden is upon counsel opposing the admission of the evidence to object and request limitations on its admission."

With reference to the trial court's obligation in these circumstances, our supreme court also stated:

"Generally speaking, the trial court has no duty to question each piece of evidence offered.... It should not assume the role of advocate and on its own motion, without request therefor, limit, comment upon, qualify, or strike evidence offered by the parties. These are the basic functions of trial counsel in our adversary system of justice and underlie the rationale of the contemporaneous objection rule which has so often been observed by our Court as a salutary requirement for the orderly administration of justice."

I recognize that the parol evidence rule is a rule of substantive law and that, in one instance, our supreme court has indicated that failure to object to evidence which violates a principle of substantive law does not constitute a waiver for purposes of appeal. *See Dare v. Sobule*, 674 P.2d 960 (Colo.1984). However, I do not believe that this concept extends to parol evidence that conflicts with the terms of a written contract.

In *Howard v. Beavers*, 128 Colo. 541, 264 P.2d 858 (1954), the plaintiff, as here, introduced evidence of the negotiations leading up to execution of the contract and the defendant introduced conflicting evidence on this issue. The trial court found the evidence of the defendant more persuasive and declined to grant a decree of specific performance. On appeal, plaintiff contended that defendant's evidence violated the parol evidence rule and pointed to the fact that the contract included an integration clause merging prior negotiations into the written agreement.

The supreme court found no merit in this contention stating:

"Plaintiff was in no position to object to the introduction of testimony concerning the conversations leading up to the execution of the written agreement at the trial, much less in this court. He stipulated that certain depositions containing these conversations might be admitted in evidence, and also testified as to the details of such conversations. He made no such objection at the trial, and therefore is precluded here."

I believe that *Howard v. Beavers, supra,* continues to represent the rule in this jurisdiction as confirmed by the comments of our supreme court in recent cases addressing the parol evidence rule. Specifically, the court addresses admission of extrinsic evidence "conditionally" in order to determine whether a term of the contract is ambiguous. *See Denver Center for Performing Arts v. Briggs*, 696 P.2d 299 (Colo. 1985); *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo. 1984). There is no reason for a party to offer parol evidence on a "conditional" basis or for a limited purpose if, as the majority holds, the trial court must disregard this evidence at the conclusion of the trial based upon a reading of the contract as being unambiguous.

Here, the trial court noted that all of the evidence was admitted without objection. The court obviously found more credible testimony from the defendant relative to the intent of the parties in the contract. The trial court also found that the post-contract conduct of the parties was consistent with the defendant's evidence that the requirement for supplying 3,000 tapes was a goal and not a guarantee. There being

substantial evidence to support the trial court's findings, I believe we are bound by those findings on appeal and that the judgment should be affirmed. *See Metropolitan Paving Co. v. Aurora,* 449 F.2d 177 (10th Cir.1971); *Halsey v. Darling,* 13 Colo. 1, 21 P. 913 (1889).