**WINER'S PUMPING UNITS, Plaintiff–Appellee and Cross–Appellant,**

v.

**EMERALD GAS OPERATING COMPANY, Defendant–Appellant and Cross–Appellee.**

**No. 95CA2114.**

Colorado Court of Appeals,
Div. IV.

March 20, 1997.

Bruce M. Kirkpatrick, David J. Turner, Durango, for Plaintiff–Appellee and Cross–Appellant.

Baker & Hostetler, Phillip S. Lorenzo, Peter J. Korneffel, Jr., Denver, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge BRIGGS.

Defendant, Emerald Gas Operating Company (contractor), appeals the trial court's award of damages against it on the judgment entered in favor of plaintiff, Winer's Pumping Units (subcontractor). The contractor does not dispute its liability to the subcontractor or the amount it owed but contends the trial court erred in calculating the offset to which it was entitled as a statutory employer for the cost of providing workers' compensation insurance for one of the subcontractor's injured employees. The subcontractor cross-appeals the court's calculation of interest on the amount due on the open account at the statutory rate of eight percent, instead of the rate of eighteen percent stated in its invoices. We affirm the trial court's determination of the rate of interest. We reverse its determination of the amount of offset to which the contractor is entitled and remand the cause for further proceedings.

The subcontractor provided goods and services to the contractor on open account. Its employee was injured while providing services to the contractor. When the employee filed a workers' compensation claim, it was discovered that the subcontractor had failed to maintain workers' compensation insurance for its employees, as required by § 8–44–101, C.R.S. (1996 Cum.Supp.). In accordance with § 8–41–401(1)(a), C.R.S. (1996 Cum. Supp.), the contractor was deemed to be the injured employee's statutory employer and thus was required to provide workers' compensation insurance coverage.

When they ceased doing business together, the subcontractor filed suit against the contractor for the amount due on the open account. The contractor responded that it was entitled to an offset in the amount of its cost for providing workers' compensation insurance coverage for the subcontractor's injured employee and counterclaimed to recover the excess of that cost over the amount owed on the open account.

The trial court determined that the contractor was entitled to an offset for the cost of insurance but concluded that the appropriate cost was not the amount actually paid by the contractor under its "retrospective premium" policy. Rather, the court limited the offset to the amount the subcontractor would have paid for a more typical fixed premium, or "guaranteed cost," policy covering just the injured employee.

■ The contractor contends it was entitled to an offset for the actual cost to it of providing workers' compensation insurance for the subcontractor's employee. We agree.

Section 8–41–401(1), C.R.S. (1996 Cum. Supp.) provides in pertinent part:

(a) Any person, company, or corporation operating or engaged in or conducting any business by ... contracting out any part or all of the work thereof to any ... subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be an employer ... and shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said ... subcontrac-

tors and their employees or employees' descendants....

. . . .

(b) The employer, before commencing said work, shall insure and keep insured against all liability as provided in said articles, and such . . . subcontractor, as well as any employee thereof, shall be deemed employees as defined in said articles. *The employer shall be entitled to recover the cost of such insurance from said . . . subcontractor and may withhold and deduct the same from the contract price* or any royalties or other money due, owing, or to become due said . . . subcontractor. (emphasis added)

Thus, § 8–41–401(1)(b), C.R.S. (1996 Cum. Supp.) in one sentence requires the statutory employer to maintain workers' compensation insurance coverage for the employees of an uninsured subcontractor and then, in the next sentence, entitles the statutory employer to recover the cost "of such insurance" from the uninsured subcontractor. Hence, the plain meaning of the statute, to which we must give effect, is that the statutory employer is entitled to recover the actual cost incurred in providing insurance for the uninsured subcontractor's injured employee—not some hypothetical amount the subcontractor might have paid to obtain insurance had it complied with its statutory obligation. *See Snyder Oil Co. v. Embree,* 862 P.2d 259 (Colo.1993)(statutory terms should be given effect according to their plain and ordinary meaning); *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555 (Colo.1989)(where statutory language is clear and unambiguous, statute should be applied as written).

Permitting the statutory employer to recover its actual insurance cost is consistent with the apparent purpose of the Act. The statutory scheme places the initial responsibility on the subcontractor, like any other employer, to provide workers' compensation insurance for its own employees. The general contractor's liability for insurance coverage arises only if the subcontractor fails to comply with its own statutory obligation.

By placing a contingent liability on general contractors for providing workers' compensa-

tion insurance coverage for employees of uninsured subcontractors, injured workers are better ensured the benefits of workers' compensation insurance, and employers are prevented from avoiding responsibility under the workers' compensation act by contracting out their regular work to uninsured independent contractors rather than hiring the worker directly. *See Curtiss v. GSX Corp.,* 774 P.2d 873 (Colo.1989); *Finlay v. Storage Technology Corp.,* 764 P.2d 62 (Colo.1988). However, as between general contractors and uninsured subcontractors, § 8–41–401(1)(b) should not be construed so as to encourage subcontractors to ignore their primary responsibility for insuring their own employees.

The statutory interpretation urged by the subcontractor would encourage all subcontractors to do just that. By not obtaining insurance, a subcontractor would avoid any insurance costs as long as none of its employees were injured. And, once an employee suffered an injury, the subcontractor's liability would be limited to the cost it would have paid for providing insurance, not for all its employees as required by the Act, but only for the single injured employee.

The subcontractor argues that an award of the contractor's actual costs would be unfair in this case because the contractor had not purchased the more typical "guaranteed cost" workers' compensation insurance. Instead, the contractor had purchased a "retrospective premium" policy. Under this type of policy, premiums are calculated after a loss based on the extent of that particular loss, a formula that here results in costs substantially greater than would have been the cost to the subcontractor of purchasing "guaranteed cost" insurance for the single injured employee.

However, the subcontractor makes no claim that such a contract is illegal, violates public policy, or fails to satisfy the requirements for valid insurance contracts under § 8–44–101, C.R.S. (1996 Cum.Supp.). *See also RCI Northeast Services Division v. Boston Edison Co.,* 822 F.2d 199 (1st Cir.1987) (retrospective cost policy not uncommon in the industry); *Harrison Western Corp. v.*

*Gulf Oil Co.*, 662 F.2d 690 (10th Cir. 1981)(two basic types of workers' compensation insurance, prospective and retrospective). Hence, though the premium amount paid by the contractor to insure the subcontractor's employee was significantly greater than the premium amount the subcontractor would have paid under a "guaranteed cost" policy, that was a risk the subcontractor assumed when it elected to ignore its statutory duty to provide workers' compensation insurance coverage for its workers.

As a final matter, we note that, because the trial court limited the contractor's offset to the amount the subcontractor would have paid had it obtained insurance, it did not address the subcontractor's argument that the contractor failed to provide sufficient evidence of its insurance costs. The court likewise made no finding concerning the total of such costs. We therefore do not address these issues, which are for the trial court to address in the first instance. And, because the contractor sought recovery of the cost of providing insurance only for the subcontractor's single injured employee, we do not address the issue of whether a contractor is entitled to recover the cost of providing insurance for all of an uninsured subcontractor's employees.

We hold only that the trial court erred in concluding that a contractor is not entitled under 8–41–401(1)(b) to recover from an uninsured subcontractor the actual cost incurred in providing workers' compensation insurance for the uninsured subcontractor's injured employee. Hence, the cause must be remanded for the trial court to resolve the parties' dispute concerning those costs.

## II.

■ In its cross-appeal, the subcontractor contends the trial court erred in calculating interest on the amount owed by the contractor on the open account at the statutory rate of eight percent, rather than the rate of eighteen percent stated in its invoices. It argues the parties' course of dealings established an agreement that the contractor would pay interest at the rate of eighteen percent. We are not persuaded.

A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis for understanding their expressions and other conduct. Section 4–1–205(1), C.R.S. (1992 Repl.Vol. 2). A course of dealing between the parties of which they are or should be aware may supplement the terms of their agreement. Section 4–1–205(3), C.R.S. (1992 Repl.Vol. 2).

Here, the subcontractor bases its claim for interest at eighteen percent on the fact that the following language appeared at the bottom of each invoice submitted to the contractor: "All invoices are subject to an 18% per annum interest charge, charged from date of delivery, if not paid by due date."

The subcontractor argues that the facts in this case fall squarely within the holding in *Murray Equipment Co. v. Curtis, Inc.*, 725 P.2d 35 (Colo.App.1986). In that case, the seller had included a statement on each invoice submitted to the buyer that unpaid invoices would be charged an eighteen percent annual interest rate. A division of this court concluded the jury could properly have found from the parties' course of dealing a supplemental agreement to pay interest at eighteen percent.

However, in *Murray Equipment*, there was no evidence that the buyer had ever in fact owed money to the seller on a past-due account. In contrast, here there was evidence that payments had on occasion been late and that on those occasions succeeding invoices did not reflect any interest charges. We therefore conclude the trial court did not err in finding the evidence insufficient to establish a supplemental agreement to charge interest on invoices paid late at the rate of eighteen percent. *See Surplus Electronics Corp. v. Gallin*, 653 P.2d 752 (Colo. App.1982).

The trial court's determination of the rate of interest on the amount due on the open contract is affirmed. Its determination of the amount of offset to which the contractor is entitled is reversed. The cause is remanded for further proceedings to determine whether the evidence presented at trial was sufficient to establish the contractor's actual cost of providing workers' compensation in-

surance coverage for the subcontractor's injured employee; to allow the contractor an offset in the amount, if any, so established; and to enter judgment in favor of the contractor on its counterclaim against the subcontractor in the amount of the excess, if any, of the amount owed to the contractor for its cost of insurance over the amount owed to the subcontractor on the open account.

HUME and KAPELKE, JJ., concur.